(Decided June 30th, 1898.)

---

## JOHN F. WAGGAMAN *vs.* CALVIN R. NUTT.

*Non-Joinder of Defendant in Action ex contractu—Plea in*
*Abatement—Construction of Contract—Waiver of*
*Non-Performance of Part of Contract.*

When only one of two parties defendant to a contract is sued,
the non-joinder must be taken advantage of by plea in
abatement, unless the declaration discloses upon its face that
the contract was joint.    Such non-joinder cannot be set up
after a plea in bar is filed.

A contract by which plaintiff agreed to purchase shares of
stock in a corporation and pool the same with defendant for
a number of years, and defendant agreed that if plaintiff
became dissatisfied with defendant's management, he should
be entitled to demand a return of the money advanced by him
after a certain notice, construed and *held* to authorize plaintiff
to hold defendant personally liable for such amount after
giving the prescribed notice.

When a contract by its terms requires the plaintiff to do cer-
tain things, and he fails to do one of them, but such non-
performance is acquiesced in by the defendant, who there-
after promised to pay the sum due to the plaintiff, then such
non-performance is waived, and plaintiff is entitled to main-
tain an action on the contract.

Appeal from the Superior Court of Baltimore City
(Ritchie, J.). The plaintiff's prayer, which was
granted, instructed the jury that "if they shall find from
the evidence in this case that the plaintiff purchased
from the defendant and one Harvey L. Page, 19 shares
of stock in the Sinepuxent Beach Company for the sum
of $2,090.00, and agreed that said defendant and Page
should have one-half the profit that might be realized on
said stock; and it was agreed that said stock was to be
placed by said Waggaman and Page in a pool for eight
years, or until such time as this plaintiff might become
dissatisfied with the management by the said Wagga-
man and Page of the affairs of said company, and then,
at any time within the said eight years, after six months'
notice in writing to the said Waggaman and Page, he
should be entitled to demand a return of the money
advanced by him, with six per cent. interest thereon
from the said Waggaman and Page; and if the jury shall
further find that said Waggaman and Page placed said
stock in a pool, as provided in said agreement of pur-
chase, and that the plaintiff thereafter became dissatis-
fied with the management by the said Waggaman and
Page of the affairs of said company, and in pursuance
thereof on the 3d day of April, A. D. 1893, demanded of
the said Waggaman and Page, by notice in writing, the

sum of $2,090.00, with interest from March 19th, 1892, to date of payment as provided in said contract; and shall further find that the said Waggaman received said notice in writing, and has repeatedly promised the plaintiff to pay him said principal and interest as aforesaid, such promises extending from a period directly after such notice, up to and within three years before the institution of this suit, and that the said defendant, John F. Waggaman and said Page, have each up to the present time failed to pay said principal and interest, or any part thereof, that then their verdict should be for the plaintiff for said sum of $2,090.00, with interest from March 19th, 1892.—(*Granted.*)

*Defendant's 1st Prayer.*—That it is the duty of the plaintiff and the burden of proof is upon him, to satisfy the jury by a preponderance of evidence produced before them in this cause that the defendant made the agreement as alleged by the plaintiff; that plaintiff has fully complied with the agreement on his part; that notice was given as required by the agreement made between plaintiff and defendant as alleged, and that defendant has failed to comply with said agreement on his part; and unless all these facts are so established in favor of the plaintiff by a preponderance of evidence, their verdict shall be for the defendant.—(*Granted.*)

*Defendant's 4th Prayer.*—If the jury find that in the early part of the year 1892, there was a verbal agreement made between plaintiff and defendant in reference to the purchase of stock in controversy, which was consummated in the month of March, 1892, by the purchase of said stock by plaintiff, and the payment for the same by him, and that thereafter, to wit, about April or May, 1892, after said Waggaman and Page had secured by options, if they should so find, from the owners thereof, the right or option to obtain from them a controlling interest in the capital stock of the Sinepuxent Beach Company, and shall find that the money necessary to make such purchases of such controlling interest had been advanced by divers persons, including the plaintiff, and shall find that an additional arrangement was con-

templated, and the paper-writing offered in evidence by plaintiff and marked " Certificate No. 2 " was prepared and signed by the three trustees hereinafter named, and delivered by them or on their behalf to plaintiff; and shall further find that under such arrangement, the stock so purchased by plaintiff and others was to be pooled for 8 years, and during that time certificates for all of it were to be issued in one block in the names of Harvey L. Page, Samuel C. Maddox and John F. Waggaman as trustees; and that Harvey L. Page and John F. Waggaman secured that if at any time during said period of eight years any beneficial owner of said stock became dissatisfied with their management of the affairs of said company, he shall, after six months' notice, in writing, to said Waggaman and Page, be entitled to demand a return of the money advanced by him with 6 per cent. interest thereon, and shall further find that a part of said arrangement was that Waggaman and Page were to receive irrevocable powers of attorney from plaintiff and all others who advanced said money and acquired such stock or controlling interest, authorizing them to vote upon plaintiff's stock and all other stock included in such controlling interest, as provided in said paper-writing; and shall further find that plaintiff did not execute such power of attorney, but refused to do so, or to be bound by such arrangement, then plaintiff cannot take any advantage of the same, or make the defendant liable in this action because of any of the provisions thereof, and their verdict must be for the defendant.

To the prayer as thus offered the Court made the following addition: " Provided, that if the jury find that plaintiff failed to comply with any requirements of said contract on his part, and such failure was acquiesced in by said defendant and Page, and they made no demand on plaintiff in said respects, and that his said stock was held and voted on in accordance with the manner contemplated and agreed upon; and further find that said defendant, after such alleged failure of plaintiff, and with knowledge thereof, and within three years of the insti-

tution of this suit, promised to pay the plaintiff the amount paid for said stock with interest, then such failure, should the jury find it, would not disentitle the plaintiff to recover, if the jury find the facts set forth in the plaintiff's first prayer."

*Defendant's 5th Prayer.*—That the true construction of the agreement in controversy, is that in the event of plaintiff seeking to withdraw from the arrangement that Harvey L. Page and defendant had an option from plaintiff under which they could obtain his stock and sell it to some other person, or buy it themselves, subject to the pooling requirements; and if they did not wish to do either, then plaintiff had the right to withdraw his stock entirely, if a vote of the majority of such beneficial holders were in favor of his doing so, otherwise he was required to remain in the pool until the end of eight years, and did not acquire a right to make defendant pay the claim sued for.—(*Rejected.*)

*Defendant's 8th Prayer.*—That if the plaintiff's right to claim the payment of the price paid by him for nineteen (19) shares of the Sinepuxent Beach Company and interest, arose as alleged by him because of an agreement with the plaintiff and a notice dated April 3rd, 1893, under which he claimed the right to receive said money six (6) months thereafter, viz.: October 3rd, 1893, then under the plea of limitations, filed in this cause, plaintiff cannot recover as this suit was not instituted until July 14th, 1897, and their verdict must be for the defendant; unless they further find it proved before them by a preponderance of evidence produced before them in this cause, taking together all evidence, that within three years before the institution of this suit, he acknowledged plaintiff's claim as a then present subsisting debt and expressly or impliedly promised to pay the same.—(*Granted.*)

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE and BOYD, JJ.

*Thomas R. Clendinen* (with whom was *Edward C. Carrington* on the brief), for the appellant.

*Fielder C. Slingluff* and *Wm. T. Donaldson* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This is a proceeding by attachment instituted on July 14th, 1897, in the Superior Court of Baltimore City by the appellee, Calvin R. Nutt, a citizen of Frederick, Maryland, against the appellant, John F. Waggaman, a resident of the city of Washington. The trial below was upon the short note case. The cause of action was as follows: "John F. Waggaman to Calvin R. Nutt. To amount due for the stock in the Sinepuxent Beach Company, which the said Waggaman agreed to pay the said Nutt, upon the said Nutt giving the said Waggaman notice that he wanted a return of the valuation put on said stock by agreement between (which notice was duly given), $2,200.00." The attachment was dissolved on appearance of the defendant and upon bond filed.

The case was tried upon the pleas of never indebted, never promised and limitations.

The defendant reserved three exceptions to the rulings of the Court, and the judgment being against him, he has appealed. As the questions in the case are presented by the bills of exception, we will consider them in their regular order.

It appears from the record, that sometime in the year 1892, the plaintiff purchased nineteen shares of the capital stock of the Sinepuxent Beach Company, which owned the summer resort, Ocean City, Maryland, for the sum of $2,090 upon certain representations previously made by one Harvey L. Page and the defendant Waggaman. The certificate of stock, which was issued by the company, contains the contract of sale and reads as follows:

"Whereas, John F. Waggaman and Harvey L. Page have secured a controlling interest in the capital stock of the Sinepuxent Beach Company, a corporation duly created and existing under and by virtue of the laws of the State of Maryland.

"And whereas, the money necessary to make the pur-

chases of said controlling interest was advanced by divers persons.

" And whereas, the ————, who had advanced said money, have agreed with the said Waggaman and Page, and with each other, that the stock representing such controlling interest shall be issued in the name of Samuel Maddox, John F. Waggaman and Harvey L. Page, trustees, to be held by them in one block for eight (8) years; and have further agreed that proxies or powers of attorney, irrevocable except as hereinafter provided, shall be given to the said Waggaman and Page, or the survivor of them, to vote upon the said controlling interest at all meetings of the stockholders that may be held during the said period of eight years; and have also agreed to pay the said Waggaman and Page, as compensation for their services in procuring such controlling interest and looking after the affairs of said company, a sum equal to fifty *per centum* of any profits on the stock so purchased, whether such profits be in the shape of dividends on said stock from the sale of lands, or otherwise, which compensation said trustees are authorized to retain and pay to the said Waggaman and Page, their executors and assigns; and have further agreed that at the end of the said period of eight years, the said trustees shall cause to be issued to each of the said beneficial owners of said stock, a separate certificate for the number of shares owned by him, when and after such beneficial owner shall have paid or caused to be paid or satisfactorily secured to the said Waggaman and Page, their executors or administrators, one-half of the difference between the market value of the said stock at that time, and what was paid for it, to wit, one hundred and ten dollars ($110.00) per share.

" And whereas, the said Waggaman and Page have secured that if at any time during said period of eight years, any beneficial owner of said stock becomes dissatisfied with their management of the affairs of said company, he shall, after six months' notice in writing to the said Page and Waggaman be entitled to demand a return of the money advanced by him with six per

cent. interest thereon, and on the receipt thereof his interest in the property of the said company shall straightway cease and determine; and if after notice given as aforesaid, the money advanced by such beneficial owner with six per cent. interest thereon is not returned to him, then the said Waggaman and Page have agreed that the said proxies or powers so as aforesaid, to be given to them may be revoked by a vote of the beneficial owners of a majority of said stock, which majority may authorize and empower some other person or persons to vote on said stock at all meetings of the stockholders in the place and stead of the said Waggaman and Page, and may also fix upon some reasonable time within which the affairs of the company shall be closed up. But before the said proxies or powers of attorney to said Waggaman and Page are revoked, they shall have the right to demand and receive the compensation hereinbefore provided, to be determined in case of disagreement by arbitrators, one to be selected by the said Waggaman and Page, and one by the beneficial owners of a majority of said stock, the two so selected to have power to nominate a third, and the decision of said arbitrators to be final and conclusive upon said Waggaman and Page, and the said beneficial owners. And whereas, the beneficial owners of said stock representing the controlling interest in the affairs of said company are desirous of having written evidence of such ownership.

"Know, therefore, know all men by these presents, that we, Samuel Maddox, John F. Waggaman and Harvey L. Page, do hereby certify and declare that we hold nineteen (19) shares of the capital stock of the Sinepuxent Beach Company, for the use and benefit of Calvin Routh Nutt, his executors, administrators and assigns, subject, nevertheless, to all the conditions, provisions and agreements hereinbefore set forth.

"This certificate, on being surrendered, may be transferred only on our books in persons or by power of attorney.

" In testimony whereof, we have hereunto set our hands and seals this seventh day of April, A. D. 1892.

SAM. MADDOX,          (SEAL)
Trustee.

JOHN F. WAGGAMAN,     (SEAL)
Trustee.

HARVEY L. PAGE,       (SEAL)
Trustee."

On the 3rd of April, 1893, the appellee served upon Messrs. Waggaman and Page a notice in these words:

" WASHINGTON, D. C., *April 3rd, 1893.*

" To Messrs. John F. Waggaman, Harvey L. Page.

" Gentlemen:—This is intended to inform you that I am not satisfied with the management of the affairs of the Sinepuxent Beach Co. As you have control of the stock of the company, you are probably willing to accept responsibility for the course things have taken. On reference to the pool agreement, I find a provision requiring you after six months' notice to return to holders of pool stock, who may be dissatisfied with your management, the money paid by them therefor, with six per cent. interest added. This will notify you that I shall expect you to comply with this provision in my case, and repay me within six months from this date, the sum of $2,090.00, with interest thereon at six per cent. from the 19th day of March, 1892, to date of payment. On receipt of this sum and interest, I will assign to you the certificate of ownership of 19 shares of stock, issued to me by yourself and Mr. Samuel Maddox as trustees, under date 19th March.

Yours respectfully,

(Signed)      C. R. NUTT."

On the 22d of August, 1895, proceedings were begun by the appellee in the Supreme Court of the District of Columbia against the trustees of this company for the purpose of having transferred and delivered to him, his 19 shares of capital stock in the Sinepuxent Company held by the trustees, free of all trusts, whatsoever. This

proceeding was subsequently abandoned by the appellee, but the trustees in their answers filed in that cause, and admitted as evidence in this case, practically admit the indebtedness as contended for by the appellee, here. Waggaman in his answer states that he " offered to give him (the appellee here) a check for the amount and interest, provided he would procure from his wife a written request to that effect." And the trustee, Page, states in his answer, he was not then able to meet the demand so made on him.

The appellee testified that at the time he gave Mr. Waggaman the second notice, that he would sue under the agreement, he (Waggaman) asked him not to sue; that he intended to fix the matter up, and he allowed two years to elapse before bringing the suit. " I had the last conversation, I think, with him in reference to the matter after he had bought the property down at Ocean City, within the past year." . . . " I had hardly ever allowed a month to go by that I did not call on him or have a conversation with him." . . . " He never did deny owing me the money; he never refused to pay it; he always told me he was going to settle it, and told me not to sue him, not to bring any suit; there was no use of he and I having any trouble." He further stated, in 1895, " I wanted to settle with him, he promised to pay me this money; he told me to get my paper, and when I went to him, he offered me his note for $1,500.00 if I would surrender this to him, and I could get the note discounted at my bank; he was to pay me the balance whenever it was convenient to him. I declined to take his note and surrender my paper."

Now we do not think it necessary to further consider or review the evidence of the case. It is quite clear, that it was legally sufficient to entitle the plaintiff to recover, and unless the Court committed some error in its rulings upon the law, the judgment must be affirmed. We come then to the questions raised by the exceptions.

The first prayer offered by the defendant, at the close of the plaintiff's case, upon the legal sufficiency of the evidence and which was rejected by the Court, was

clearly erroneous.    It sought to withdraw the case when the evidence was sufficient to be left to the jury.

The question raised by the second bill of exception is identical with the question presented by the motion in arrest of judgment, and relates to the plea in abatement, which was properly refused by the Court.

It was settled by this Court in *Spencer* v. *Patten*, 84 Md. 421, that " a plea in abatement cannot be pleaded after a plea in bar has been filed, unless the facts relied on to abate the action arise afterwards.    If it be conceded, as contended by the appellants, that a plea in bar only waives matter in abatement then existing, and of which the party was aware at the time when his plea in bar was filed, this additional qualification cannot aid the appellants, as the plea does not allege that they were not aware of the facts stated when they filed the plea in bar. . . . The matter relied on in abatement existed at the period when the plea in bar was filed, and although the leave granted to plead *de novo* gives to the defendant the right to plead any plea to the action which he may select, it does not confer the right to raise dilatory objections, of which the party was aware when he exhibited his plea in bar and which he had thus surrendered." And in *Cruzen* v. *McKaig*, 57 Md. 464, it is said: " The principle has long since been settled that in case where two or more are jointly bound by contract and one only be sued, it is no matter in bar of the action, or ground of demurrer, or in arrest of judgment, that the others are not joined, except where the declaration discloses upon its face that the contract was joint, and the plaintiff fails to show why all the parties jointly liable have not been joined as defendants; nor does it form ground of variance in the evidence upon the trial.    Though the contract be joint, it is still the contract of the party sued, and recovery may be had against him; and though he be declared against as the only party bound, or as being severally bound, by the contract, if he does not take advantage of the non-joinder by proper plea in abatement, he cannot object to the reception in evidence of the joint contract upon the ground of variance between the *allegata* and *probata*."

The plaintiff's first prayer, and the defendant's first, fourth and eighth prayers, which were granted by the Court, and which we have carefully examined fully and fairly, stated the law of the case, and as favorably to the defendant as he could require.

The defendant's second, third, fifth, sixth and seventh prayers proceeded upon an entirely different view of the law, and presented different questions from those embraced in the instructions granted by the Court and were properly refused. The ninth and tenth prayers related to the legal sufficiency of the evidence and were properly rejected for the reasons we have given. The eleventh prayer embraced the question as to the nonjoinder of the trustee, Page, and has been passed upon by us in the second bill of exception.

There was no evidence to sustain the twelfth prayer and the Court was right in rejecting it. For the reasons we have given the judgment will be affirmed.

*Judgment affirmed with costs.*

(Decided June 30th, 1898.)