STATE OF MARYLAND, Use of Ella Needles, and
Maurice E. Needles, Infant, by His Mother and
Next Friend, Ella Needles.

*vs.*

THE MARYLAND ELECTRIC RAILWAYS CO.

*Railroads : ancient ordinances regulating—; not applied to mod-
ern street cars. Negligence : crossing tracks in front of
closely approaching car. Contributory negli-
gence : effect of—.*

The Ordinance of the Mayor and City Council of Baltimore
of 1839, to regulate "railroad cars," codified as section 7 of
Article 30, of the Baltimore City Code of 1906, and prohibiting
the driving, hauling or propelling the cars of railroads or rail-
ways, within the city, at any faster speed than a walk, does
not apply to the present system of *street cars.*          p. 437

One who attempts to cross a track, in full view of a moving
car coming towards him, and so near, etc., that no person of
ordinary care and prudence would have made the attempt, is
guilty of contributory negligence as a matter of law, and not
entitled to recover, when there is no evidence that the car could
have been stopped between the time he left his place of safety
and the time he was struck.          pp. 438, 442

In general, where a plaintiff has been proved to have been guilty of contributory negligence, the question of negligence *vel non* of the defendant becomes immaterial.                    p. 441

*Decided January 11th, 1915.*

Appeal from the Superior Court of Baltimore City. (BOND, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Geo. Washington Williams* and *D. G. McIntosh, Jr.* (with whom were *D. G. McIntosh* and *James F. Thrift,* on the brief), for the appellant.

*Albert C. Ritchie* and *Robertson Griswold* (with a brief by *Ritchie, Janney, Griswold & Hamilton*), for the appellee.

BRISCOE, J., delivered the opinion of the Court. ·

This is a negligence case, and if anything has been settled by the uniform decisions of this Court, it is the law upon this subject, and as applicable to the facts of a case like this.

The suit was brought in the Superior Court of Baltimore City for the use of the widow and an infant child of William H. Needles against the defendant, The Maryland Electric Railways Company, a body corporate, to recover damages on account of his death.

The declaration states that the deceased husband and father was struck and instantly killed by one of the cars of the defendant company, while attempting to cross Ostend street, a public street and crossing in Baltimore City, at the

intersection of this street with the tracks of the Baltimore and Ohio Railroad, and the track of the defendant leading to Camden Station. That his death was due to the negligence of the agents or employees of the defendant company, who were in charge of and ran the car, and that the deceased was exercising due and ordinary care and caution at the time of the accident.

There were two exceptions reserved at the trial of the case in the Court below, as set out in the record.

The first exception relates to the ruling of the Court in granting the defendant's motion at the conclusion of the plaintiff's evidence, to strike out certain evidence which had been admitted subject to exception in the course of the trial.

The second exception is to the action of the Court at the conclusion of the plaintiff's testimony, in granting the first and second prayers of the defendant, which instructed the jury:

*First*—That there is no evidence in this case legally sufficient to entitle the plaintiff to recover, and therefore their verdict must be for the defendant.

*Second*—That there is no evidence in this case legally sufficient under the pleadings to entitle the plaintiff to recover, and therefore their verdict must be for the defendant.

The evidence which had been offered by the plaintiff, as set out in the first exception and which had been admitted subject to exception, is section 7 of Article 30 of the Baltimore City Code of 1906. It is as follows:

"7. No passenger, burden or other cars shall be driven, hauled or propelled on any of the railroads or railways within the city limits (except in ascending the heavy grades of streets, which may require a greater speed, when the rate shall not exceed six miles an hour), at any faster gait or speed than a walk, and at no time move without a brakeman, in addition to the driver, under the penalty for each and every offense of twenty dollars, except as provided in section 14 of this Article."

Manifestly, there was no error in the ruling of the Court in the first exception, in excluding the ordinance as evidence in the case. The ordinance never was intended and it can not be held to apply to cars such as are maintained by the appellee, and propelled by electricity through the streets of a city, under the present electric system.

It appears to have been passed, as far back as June, 1839, (Ordinance No. 11) and as supplementary to an ordinance passed and approved May 22, 1838, No. 43, entitled "An Ordinance for the Better Regulation of Railroad Cars."

In *B. & O. R. R. Co.* v. *Welch*, 114 Md. 542, this Court held, that section 14 of Article 30, of the Baltimore City Code of 1906, requiring a locomotive when used within the city limits to have a man riding on its front when going forward and on its tender when going backward, not more than 12 inches from the bed of the road, &c., &c., was obsolete and inoperative and was not admissible in evidence in an action to recover damages for a collision between the tender of a locomotive and a trespasser on the tracks. JUDGE SCHMUCKER, in delivering the opinion of the Court, said, "that the section had been held by us to be now practically obsolete and inoperative in *B. & O. R. R.* v. *Mali*, 66 Md. 59, and *State, use of Harvey*, v. *B. & O. R. R. Co.*, 69 Md. 346.

The second exception embraces the rulings of the Court upon the two prayers, withdrawing the case from the consideration of the jury, and directing a verdict for the defendant.

Upon the evidence set out in the record, in this case, we are of opinion, the defendant directly contributed by his own negligence and want of care to the unfortunate accident that resulted in his death, and the Court below was entirely right in withdrawing it from the consideration of the jury.

The decisive and controlling fact in this case, was the voluntary attempt of the deceased to cross the track in full

view of a moving car coming towards him and so near to it, that no person of ordinary care and prudence would have made the attempt.

Under such a state of facts this Court has repeatedly said, that a person so attempting to cross a track, was guilty of contributory negligence as a matter of law. *B. & O. R. R. Co.* v. *Mali,* 66 Md. 53; *Dyrenfurth* v. *B. & O.,* 73 Md. 374; *U. Rwy. & E. Co.* v. *Durham,* 117 Md. 192, and cases there cited.

There were four witnesses who testified on behalf of the plaintiff. The witness Brunner, a crossing watchman of the B. & O. R. Co. who was stationed in full view of the deceased, was the only eye-witness to the accident.

Mrs. Needles, the widow of the deceased, testified, that at the time of her husband's death and a long time before, they resided at Franklin City, Va.; that he was forty-eight years of age; that he was agent for the Pennsylvania Railroad and agent for the Adams Express Company at Franklin City, and owned and operated a large canning factory, as well as oyster boats and grounds, and also sold fertilizer and seeds. That he was heavily in debt, but that he had a large lot of tomatoes and other canned goods which she thought would clear up all of the debts and leave a little besides. That Griffith & Boyd had notified him, that they desired to have their money, and as he had had an agreement with them that they were not to press him, he started for Baltimore on Tuesday preceding May 3rd, 1912, the morning on which he was killed, at 12:30. That he was to return on Thursday, but did not do so, and she wrote Griffith & Boyd about him and was answered by them that he had not been to their place. And that they instituted a search with the result that he was found in the morgue on May 3rd, 1912. Having been taken there by the police authorities, by the order of the coroner. That he was an industrious and a man of good habits. That he was subject to fainting spells; sometimes he would fall right down and other times he would walk unsteadily and

then fall unless he was able to catch himself; that he came up to Baltimore sometime ago to be treated for the trouble.

Maurice E. Needles, the son, testified that he was twenty-one years of age, and at the time of his father's death he was making $60 a month and was getting his board.

The witness Laumann, who was a watchman, at the Ostend street crossing, where the tracks of the B. & O. cross this street, between Howard and Eutaw streets, testified as to the *locus in quo,* the existing situation of the tracks and the structures near the crossings where the accident happened. The witness did not see the accident nor the deceased, before he was struck, but visited the place, shortly thereafter. He testified, that he saw the man lying dead on the Eutaw street side of the track, with his head toward the track and his feet towards Eutaw street, about three or four feet from the track, that the body of the man was lying "just about the hind end" of the car. That all of the gates were down at the crossings and there was nothing to obstruct the view of a person walking from the tower where he was stationed to the Short Line track, in the direction that the Short Line car was coming. That he operated two sets of gates, one on the Howard street side and the other on the Eutaw street side of Ostend street, but the tower was closer to the Howard street side. There were three lights in that locality, one at the Eutaw street side, one at the tower where he was and another at Howard street, and that it was a well lighted place, as the B. & O. had lights all through the yard. The tracks on the west side of the tower were described as follows: Two spur tracks which ran into a round house, known as "Old Bailey's," another ran into a store house, then came the east and west bound main tracks of the B. & O., and then to the west was the track used by the appellee, known as "the Annapolis Short Line." That there were a number of other tracks east of the tower, between the tower and Howard street.

He further testified, that he heard the car blow, on the night of the accident, when it reached Russell street, on its route to Camden street, and that Russell street is below Eutaw street. That he did not hear the car blow again, that he had an unobstructed view from his tower south or southwest to the end of Eutaw street.

The witness Brunner, who saw the accident, was in Bailey's tower at the southwest corner of Eutaw street and the intersection of the B. & O. tracks, and about 200 feet from the tower occupied by the witness Laumann, which is on the north side of Ostend street. He testified, that he only remembered the car coming in and seeing the man crossing. That when he first saw the car it was coming towards Eutaw street; he saw it when it crossed over Russell street two squares west. He also saw it when it crossed over Eutaw street; and at a speed of about 15 miles an hour; that he paid no attention to the car after it passed Eutaw street; that he was watching the man crossing Ostend street, the man who was killed, and that he was then standing at his tower. That when he first saw the deceased, he was walking on Ostend street, coming from Howard street, and about 40 feet east of the appellee's track, and walking west towards Eutaw street. That he had a perfect view of the deceased and the surroundings, and that at that time he had not passed the tracks of the B. & O. Railroad, but had passed the tower. At this time the appellee's car was coming towards Eutaw street, going north to Camden Station. That he continued to walk west until he got within eight or ten feet of the electric line and then he stopped for a couple of seconds when he started ahead again, and that he did not know how far the car was away from him when he started to cross the track, because he was watching the man and not the car. He further testified that a person on Ostend street opposite the Laumann tower could see an electric car as far off as halfway between Eutaw and Warner streets, and that when a person walking west on the east bound track of the B. & O.

track (next to the appellee's track) he could see to Eutaw street. That the deceased staggered somewhat as he walked across the tracks and the engineer picked up pieces of a broken bottle the top of a white glass with a cork in it, and it smelled like whiskey.

We have stated the testimony somewhat at length, and it will be seen, that it fully supports the conclusion reached by us that the deceased was guilty of such a lack of ordinary and reasonable care on his part in attempting to cross the track of the appellee, in full view of a moving electric car, as to preclude a recovery by the plaintiff in this case.

There is nothing in the evidence disclosed by the record to take it out of the operation of the principles of law, controlling similar cases, of contributory negligence, and established by repeated decisions of this Court. *B. & O.* v. *Good,* 75 Md. 526; *B. & O. R. R.* v. *Mali,* 66 Md. 53; *Dyrenfurth* v. *B. & O.,* 73 Md. 378; *Cowen* v. *Dietrick,* 101 Md. 48; *Winter* v. *United Rwy.,* 115 Md. 71; *United Rwy.* v. *Durham,* 117 Md. 195, and cases there cited.

As was said by this Court, in *Heying* v. *United Rwy. Co.,* 100 Md. 282, the defense of contributory negligence admits of some degree of negligence on the part of the defendant. If the plaintiff was guilty of contributory negligence the question of negligence *vel non* on the part of the defendant becomes immaterial, for if there was no negligence on its part there can be no recovery, and if there was, the same result would follow because of the plaintiff's contributory negligence.

In *Winter* v. *United Rwy. Co.,* 115 Md. 72, this Court said, admitting that the motorman of the moving car was negligent in failing to sound his gong as he approached the crossing and assuming the car was going at an excessive speed, we think the testimony of the plaintiff's driver convicts him of negligence directly contributing to the collision and there can be no recovery.

In this case, there is no evidence that the car could have been stopped from the time the deceased left his place of safety, eight or ten feet from the defendant's track and the time he reached the track and was struck.

In *McNab* v. *United Rwy.*, 94 Md. 719, it is said: "There is nothing in the suggestion that even though Mrs. McNab was herself guilty of negligence, the company's servants were blamable because they made no effort to avoid the consequences of her negligence. And there is nothing in the suggestion because the last act of negligence was committed by Mrs. McNab. The doctrine here invoked presupposes that the company's employees knew or by the use of due care could have known, the peril in which the injured party had by her own negligence placed herself; and that they either knew or could have known of that peril in time to avert the injury. When the motorman saw—and we may presume he did see, because he could have seen—that Mrs. McNab was in a place of safety, he was under no obligation to assume that she would deliberately leave that place and drive into the jaws of danger. * * * There is not the faintest gleam of evidence to show that the motorman could have stopped the car or checked its speed so as to avoid the collision after Mrs. McNab drove upon the track on which the car was moving. The doctrine is only applicable when the company's negligence in not avoiding the consequences of the plaintiff's negligence is the last negligent act. It can never be invoked when the plaintiff's own act is the final negligent act." *W. M. R. R. Co.* v. *Kehoe,* 83 Md. 452; *U. Rwy. & E. Co.* v. *Durham,* 117 Md. 195.

Finding no error in the rulings of the Court, the judgment will be affirmed.

*Judgment affirmed; with costs.*