# BLUTHENTHAL & BICKART, A Corporation,

*vs.*

## THE MAY ADVERTISING CO., A Corporation.

*Practice: withdrawal of juryman; discretion of court. Prayers: unsupported by evidence. Contracts: waivers.*

A person entering into a contract has a right to insist on its performance in all particulars, according to its meaning and spirit; but if he chooses to waive any terms introduced for his benefit, he may do so.                    p. 282

Prayers unsupported by any evidence in the case are properly refused.                    p. 283

A prayer concluding with the right of either party to recover must submit the whole case, and the conclusion reached upon the facts must be correct notwithstanding all other facts and circumstances in evidence.                    p. 284

Before the jury was sworn the court allowed a party to withdraw his peremptory challenge against a juryman, who thereby became a qualified juror, and exercised his peremptory challenge against another juror, who had previously been accepted: *Held,* that the Court in so doing acted within its discretionary power, and as it did not appear from the record that there was any abuse of discretion, resulting in injury to the opposite party, its action constituted no ground for reversal.    p. 285

It is not reversible error for a Court of its own motion to exclude a juror, even for insufficient cause, if an unobjectionable jury is afterwards obtained.                    p. 285

It is the function of the jury to pass on the weight and credibility of the testimony, and the duty of the Court to state the law applicable to it.                    p. 282

*Decided December 16th, 1915.*

Appeal from the Superior Court of Baltimore City. (SOPER, C. J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*J. Kemp Bartlett* (with whom were *Edgar Allan Poe, L. B. Keene Claggett* and *R. Howard Bland* on the brief), for the appellant.

*Israel B. Brodie* (with whom was *Philip Sachs* on the brief), for the appellee.

BURKE, J., delivered the opinion of the Court.

The May Advertising Company, the appellee on this record, is a New York corporation. As its name indicates, it is engaged in the advertising business, which it conducts by painting bulletin boards, erecting them along the lines of railroads, and by securing wall space and painting thereon such advertisements on signs as its customers may desire. Carl May is the president and Wilson C. Reed the vice-president of the company. The office of the company is in New York City, and it has a shop in Pittsburgh, Pa., where sketches are made, and the metal bulletin boards are painted. The appellant, Bluthenthal & Bickart, is a Maryland corporation, and is a blender of whiskies and gin, which it sells under its own trade marks or labels to the trade in a number of Southern States. Some of its brands of whiskey are known as Old Joe, Mobile Buck, "Rx" Malt, and Mark Rogers. Aaron Bluthenthal is president and Monroe L. Bickart secretary and treasurer of the company.

In the early part of the year 1912 the parties to this case
entered into a written contract, the terms of which are found
in three letters appearing in the record, under which the
appellant employed the appellee to paint from sketches, ap-
proved by the appellant, a thousand or more square feet of
wall space on locations to be selected by the appellee in cer-
tain towns and cities in the South. The contract provided
that the work was to be done in a first-class and workmanlike
manner, and that the appellant should pay, thirty days after
the completion of the showing in each city, the sum of six
cents per square foot for the actual number of square feet
painted in each city. A list of the cities in which the paint-
ing was to be done, as well as the approximate wall space to
be painted in each city, appears in the contract. The appel-
lee claimed to have performed its work under the contract in
seven of the cities mentioned therein, and demanded pay-
ment for the work done. Its claim amounted to $4,632.91.
This claim the appellant refused to pay. The appellee
brought suit against it in the Superior Court of Baltimore
City and recovered a judgment. This appeal was taken by
the appellant, the defendant below, from that judgment. The
suit was brought under the Speedy Judgment Act, and the
declaration contained the common counts, and one special
count, which set out the contract between the parties and
alleged the completion of the contract in certain specified
cities; the refusal of the defendant to pay for any of the
work done; and that the defendant had directed the plain-
tiff not to proceed with the work in any of the other cities
mentioned in the contract. At the trial the appellee confined
its claim for work actually done in pursuance of the contract.
It did not seek to recover for the act of the defendant in pre-
venting, as alleged, the performance of the contract in other
cities. The contract contained a number of provisions which
are not involved in this controversy. The three provisions
which are involved are these: (1) That the plaintiff was
personally to select the locations, and to use its best judgment
in so doing. (2) That the painting was to be done in a first-

class and workmanlike manner. (3) That the wall display should make a proper and satisfactory showing. These obligations were expressly assumed by the plaintiff, and in addition to these, the defendant claims that the plaintiff was under an obligation to do the work by its own men.

Apart from certain technical defenses, which were abandoned in this Court, the defenses relied on were, *first,* that in many instances in each city, the work was not done in a first-class and workmanlike manner; *secondly,* that in some instances the plaintiff did not personally select the locations; *thirdly,* that in many cases the locations selected were poor and the wall display was poor and the showing not satisfactory; and *fourthly,* that the painting was done in each city, not by the plaintiff's own men, but by local men employed by the plaintiff. This was admitted by the plaintiff, and the reason that local men were engaged to do the work was, as stated by Carl May, that he was able to secure better locations by making arrangements with local men, because they were able to give a better distribution for locations than he would be able to secure. On other questions of fact there was decided conflict in the testimony. That of the plaintiff tending to show that the work was done as required by the contract; that of the defendant that in many instances the locations were poor, the workmanship inferior and the showing unsatisfactory.

It is needless to discuss this conflict in the evidence, as all the material questions of fact were submitted to the jury under the instructions of the Court. It is important, however, in this connection to state that testimony was offered on behalf of the plaintiff to the effect that the defendant was informed prior to the beginning of the work of painting that local advertisers had been engaged to do the work, why this arrangement with local men had been made, and that that arrangement had been approved and assented to and acquiesced in by the defendant. The defendant never attempted to rescind the contract, but permitted the work to proceed

until all the work sued for in this case had been done. It then expressed its willingness, after having inspected the work, "to pay for the signs that have been approved as good and fair," and in its letter of September 3, 1912, to the plaintiff a number of signs are designated as good or fair.

During the course of the trial, seven exceptions were reserved by the defendant—one to the action of the Court in excluding a juror from the panel before he had been sworn; five to rulings on evidence, and one to the ruling on prayers submitted at the conclusion of the whole case.

The defendant contends that the Court committed reversible error in refusing its first and fourth prayers. The first prayer was treated as a demurrer to the evidence, and asked that the jury be instructed to find their verdict for the defendant. Conceding that it could so be treated in the form in which it was drawn, which, however, we do not decide, we are of opinion that it was properly refused. The defendant invokes in support of this prayer the doctrine announced and applied in *B. & O. R. R. Co.* v. *Brydon,* 65 Md. 198, and *Eastern Advertising Co.* v. *McGaw,* 89 Md. 72. In the first of these cases it was held that in a contract where the quality and acceptability of the coal were left to the approval of a third party, there could be no recovery. unless acceptance by such third party be shown, or unless it be shown that the coal delivered was rejected by him in bad faith or fraudulently. This rule has been frequently applied by this Court. In the second case, it was shown that the appellant, without the consent of the appellee, had sold its business of street car advertisement to another company, but the appellee refused to assent to the assignment of the contract to the purchaser. It was contended that upon the authority of these cases there could be no recovery; *first,* because the work was not satisfactory to the defendant; and *secondly,* because the work of painting the signs on the walls of houses had been done by local advertisers in the various cities, without the defendant's knowledge or consent.

It is sufficient to say in reply to these contentions, *first,* that the defendant did approve a great many of the signs and expressed its willingness to pay for them; and, *secondly,* that there is evidence that it consented that the painting of the signs should be done by local advertisers. In view of this evidence the Court was right in not withdrawing the case from the jury. It is the function of the jury to pass on the weight and credibility of the testimony, and it is the duty of the Court to state the law applicable to it. "If the plaintiff completed the work according to the terms of the agreement, it was entitled to recover the contract price. If, however, it was done imperfectly, or in any manner variant from the stipulations of the contract, and was accepted by the defendant, the plaintiff was entitled to recover what it was reasonably worth. There can be no question on this point since the decision of this Court in *Watchman* v. *Crook,* 5 G. & J. 239. We take the principle to be, that a person entering into a contract, has a right to insist on the performance of it in all particulars, according to its meaning and spirit; but that if he chooses to waive any of the terms introduced for his own benefit, he has the power to do so. If he contracts for an article of a particular quality or style of workmanship, and he elects to accept in lieu of it one of another kind, he discharges the other party from the obligation of furnishing an article which complies with the specifications of the contract, and he becomes bound by a new implied contract to pay for the article, which he has accepted, what it is reasonably worth. And so where there is a contract for work of a particular description, and he accepts work of another kind. But he is not obliged to accept anything else in place of that which he has contracted for; and if he does not waive his right, the other party to the contract cannot recover against him without performing all the stipulations on his part. The question then in the present case, supposing that the work has not been done according to the contract, is whether the defendant has accepted it. The law on the subject of accept-

ing work done on the land or property of another, has some-
times been declared with great severity against parties doing
such work in a manner not conformable to the contracts
which they have made.   But these harsh judgments go be-
yond the requirements of justice, and are much modified by
the benign and equitable construction of contracts which pre-
vails in this State." *Presbyterian Church* v. *Hoopes Co.,*
66 Md. 598; *Walsh* v. *Jenvey,* 85 Md. 244; *Orem* v. *Keelty,*
85 Md. 337; *Waggaman* v. *Nutt;* 88 Md. 265; *North Bros.*
v. *Mallory,* 94 Md. 305.

It is true that the defendant denied that it consented that
the work of painting should be done by sub-contractors, and
insisted that it did not become aware that it had sub-let until
the work was practically completed, but there is evidence
from which the jury might have found both consent to and
acquiescence in this method of doing the work.

By its fourth prayer the defendant asked the Court to in-
struct the jury, that if they should find from the evidence
that the contract between the plaintiff and the defendant pro-
vided that the plaintiff should personally supervise and select
the locations for the various signs to be painted by the plain-
tiff in the cities designated by the contract between the par-
ties, for the purpose of advertising the gins and whiskies sold
by the defendant, and cause the same to be painted by paint-
ers in their direct employment; and if they should further
find from the evidence that the plaintiff did not personally
supervise and select said locations for the signs, but on the
contrary, left the painting, supervision and selection of said
locations to other persons without the knowledge or consent
of the defendant, then the plaintiff is not entitled to recover,
and the verdict of the jury should be for the defendant.

This prayer was bad for a number of reasons.   In the first
place there is no evidence to support the hypothesis of the
prayer that the plaintiff left the supervision and selection of
locations, for the various signs to be painted under the con-
tract, to other persons.   There is no evidence in the case to

support this unqualified statement, and the Court was justified in refusing the prayer for this reason. Again, its reference to the painting of the signs by other persons "without the knowledge or consent of the defendant" did not correctly state the law applicable to the facts in evidence, and would have been calculated to mislead the jury. The jury may have concluded under this form of prayer that the defendant was not liable unless it had knowledge and consented to the subletting of the work before the work was actually begun, as Carl May testified it had. Notwithstanding it may have so found, if it further found—as it might well have done—that the defendant during the course of the work became aware of the contract made with local men for doing the painting and that they were actually doing the work and that it acquiesced and consented to this and approved a large part of the work, it would still be liable. A prayer concluding with the right to either party to recover must submit the whole case, and the conclusion reached upon the facts stated must be correct notwithstanding all other facts and circumstances in evidence, or as stated in *Corbett* v. *Wolford,* 84 Md. 426: "When it is stated in a prayer that the plaintiff is entitled to recover, provided the jury find certain enumerated facts, it has been uniformly held that the effect of the prayer is to withdraw from the jury all other facts than those mentioned. It was so declared in *Riggin* v. *Patapsco Insurance Company,* 7 Harris & Johnson, 280; and also in *Bosley* v. *Chesapeake Insurance Company,* 3 Gill & Johnson, 462; *Adams* v. *Capron,* 21 Md. 205; *Haines* v. *Pearce,* 41 Md. 234, and in every other case where the question has been raised. If the jury would be justified in drawing from the facts excluded from the prayer a conclusion different from that which the prayer requires them to find, it is a manifest corrollary from the ruling just mentioned that it would be error to grant such a prayer. The cases just cited maintain this position."

The other exceptions will now be considered in the order in which they were reserved.

After the panel had been selected to try the case in conformity with section 13, Article 51 of the Code, and before any of the jurors had been sworn, the counsel for the plaintiff requested the Court to allow him to withdraw one of his strikes, and to exercise the same so as to exclude from the panel T. Marshall Duer, who had been designated as foreman of the jury. This request appears to have been made because counsel for the plaintiff noticed that Mr. Duer, after taking his seat in the jury box had nodded in recognition to Mr. Bland, one of the counsel for defendant. The record states that: "Over the objection of counsel for the defendant, the Court permitted this action, and thereupon counsel for the plaintiff withdrew his peremptory strike to Mr. Whitelock and exercised the strike in the case of Mr. Duer. As above stated, counsel for the defendant objected to this substitution upon the jury of Mr. Whitelock for Mr. Duer, but the Court overruled the objection. The Court, however, offered to counsel for the defendant the privilege of having the jury drawn strictly in accordance with the provisions of the Code, but counsel for the defendant declined this offer, stating that they desired merely to confine their objection and exception to the withdrawal of Mr. Duer and the substitution of Mr. Whitelock in the manner above stated. The substitution of Mr. Whitelock for Mr. Duer was then made and Mr. Hardwick was designated as the foreman and the jury sworn."

It does not appear that the defendant was injured by the action complained of, or that the jury which actually tried the case was not composed of competent and qualified jurors. The authorities support the proposition that it is not reversible error for the Court of its own motion to exclude a juror, even for insufficient cause, if an unobjectionable jury is afterwards obtained. In *Pittsburgh, etc., Ry. Co.* v. *Montgomery,* 152 Ind. 1, in discussing an objection such as that now under consideration, the Court said: "It is complained

under the motion for a new trial that the Circuit Court erred in excusing on its own motion the juror Overholser, who it is alleged was a competent juror, over appellant's objection. But it is not shown that the jury which was finally impaneled was not a fair and impartial jury.  In such a case, the matter is very much in the discretion of the trial Court, and no error is committed where no injury results from the Court's action in excusing the juror: *De Pew* v. *Robinson,* 95 Ind. 109.  It is not even claimed that any injury resulted therefrom."  This question is examined and authorities collected in 12 *Ency. Pl. & Prac.* 381-384, where it is said: "In the absence of any showing to the contrary, it will be presumed that in excusing a juror the Court acted on correct principles, and that the excuse was sufficient to warrant its action.  In any event, the exercise of its discretion will not be revised unless it is clearly apparent that it has been abused. * * * That the Court may exercise its discretion in this respect after acceptance of a juror, before completion of the panel, or before the person selected has been sworn and charged with the case, is generally conceded."  What the Court did was done in the exercise of its discretionary power. and as there was no abuse of its discretion resulting in injury to the defendant its action does not constitute a cause for reversal.

We find no merit in the second exception.  The witness Carl May, was testifying as to how he had made selection of location in Dunellon, Ocalla and St. Augustine.  He stated that he did not go to these three cities; but Mr. Mott had a map, and as the witness knew the cities very well, he picked out the selections, and said to Mr. Mott: "Any location down town that is on an open street that will give a good showing will be satisfactory to me."  The Court overruled a motion to strike out this instruction given to Mott.  It is not perceived how the defendant could have been injured by this ruling, and as it was merely a statement of the method by which the witness made selections of locations in those cities, we can see no good reason for excluding it.

The third exception was taken during the examination of Thomas L. Kaplin, a witness produced on the part of the plaintiff. There was evidence tending to show that Mr. McCormick was the defendant's representative in New Orleans, and that he had been delegated to pass upon the signs in that city. The witness stated that he went to New Orleans, having a letter of introduction from Mr. Bickart, the secretary and treasurer, to Mr. McCormick; that he saw McCormick and went over the matter of locations with him; that "in my conversation with him he informed me that the wall showing was satisfactory so far as he was concerned." A motion was made by the defendant to strike out the statement made by McCormick. The Court overruled the motion.

We are of opinion that sufficient evidence appears in the record of Mr. McCormick's agency and authority with respect to these signs to have authorized the Court, under the principles stated in *Rosenstock* v. *Tormey,* 32 Md. 182, and *Fifer* v. *Coal Co.,* 103 Md. 1, to admit the statement objected to. The other reasons urged in support of the motion are disposed of by what we have said in passing on the rulings upon the prayers.

It is not contended that there is any reversible error in the fourth, fifth and sixth exceptions.

After a careful consideration of the whole record we are of opinion that the case was fairly tried and submitted to the jury under proper instructions as to the law, and that the judgment entered in favor of the plaintiff in the lower Court should be affirmed.

*Judgment affirmed, the costs to be paid by the appellants.*