BALTIMORE & OHIO RAILROAD COMPANY *v.*
STATE, FOR USE OF MARGARET CARBONE.
[No. 28, October Term, 1935.]

*Decided December 4th, 1935.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Raymond S. Williams* and *John S. Stanley*, with whom were *Allen S. Bowie* and *Hershey, Donaldson, Williams & Stanley* on the brief, for the appellant.

*Walter V. Harrison*, with whom were *R. Lewis Bainder* and *Harrison & France* on the brief, for the appellee.

JOHNSON, J., delivered the opinion of the Court.

The appeal in this case is from a judgment entered by the Baltimore City Court upon the verdict of a jury assessing damages in favor of the equitable plaintiff, Margaret Carbone, mother of Salvatore Carbone, deceased, against the appellant, for alleged negligence of the latter, said to have resulted in the death of her son.

The decedent, a friend of Santo Genovese, on October 10th, 1934, suggested to him an automobile ride for the purpose of visiting two friends on Light Street, whereupon Carbone and Genovese went to a Drive-It-Yourself establishment, and Genovese hired a Ford automobile. Carbone then decided he wanted to ride to the Valencia Café to see some friends, and, with Genovese driving, they went there, and upon their arrival, not finding the friends they sought, they met Gertrude Williams and Belle Rosenstein, with whom they were well acquainted, and were asked by these girls to take them home. This they agreed to do, after waiting, a while and not finding the friends they had sought. They left the Valencia with Genovese driving and Gertrude Williams sitting beside him, while the Rosenstein girl and Carbone occupied the rear seat. The car was driven north on Light Street, thence into Pratt Street, and proceeded thereon in an easterly course. Pratt Street is ninety-five feet wide

from curb to curb, and in the southerly portion thereof is a single railway track known as the Municipal Belt Railway, which is south of and parallels the double tracks of the United Railways; the distance from the south rail of the Belt Railway to the south curb of Pratt Street being twenty-two feet. The railway track in question runs beyond the entrance to Pier 2, Pratt Street, which is a space between the Standard Oil building on the west and the Arundel Corporation building on the east. At a point north of the Standard Oil building there is a switch leading from the Municipal Belt Railway into Pier 2; the switch point being 1064 feet east, reckoning from the west curb of Light Street. At about 10 o'clock P. M., while the automobile in which they were riding was being driven easterly in the twenty-two foot space above mentioned, a freight engine of the appellant, with one car attached, was standing on the Belt Railway a short distance west of the switch leading into the property of the Arundel Corporation. The train had previously consisted of an engine and four cars, the rear car of which had been left standing on the tracks east of the switch, and the train, with the remaining three cars, had previously moved west on Pratt Street and then backed easterly for the purpose of uncoupling the two rear cars and allowing them to run by momentum into this switch. The combined length of the two cars was about eighty-six feet. The engine was equipped with a large headlight shining brightly; also in the center of Pratt Street, the entire distance between Light and Commerce Streets, stood certain poles approximately thirty feet apart, from the tops of each of which, at a height of twelve or fourteen feet above the ground, were 600-candle power electric lights ten times stronger than ordinary light. Shortly before the train had stopped, the two rear cars had been uncoupled, and while running into the switch of Pier 2 across this twenty-two foot space between the south track of the Belt Railway and the south curb of Pratt Street, at a speed of ten or twelve miles per hour, were observed by Genovese, driver of the automobile, as he proceeded east

on Pratt Street, when he was quite near them. He swerved the car sharply to his right, and in this manner avoided contacting them, but next turned it to his left to prevent hitting the Arundel Corporation building immediately in front of him, and, in attempting to turn easterly on Pratt Street, hit a telephone pole, from which collision Carbone sustained fatal injuries.

During the course of the trial appellant reserved twelve exceptions to the action of the trial court, eleven of which relate to rulings upon evidence, while the twelfth embraces rulings upon the prayers.

Fielder Ireland, a yard conductor of appellant, testified for plaintiff, and stated that he was in charge of the train from which the two cars had been uncoupled. After describing the movement immediately preceding the accident, he related on cross-examination the precautions which had been taken during the movement of the two cars for the safety of traffic on the south side of Pratt Street, and stated that the flagman, Mewshaw, was placed on the south side of the track with a red lantern to stop east-bound traffic, and that Mewshaw first gave the witness, who was on the north side of the track, the signal that everything was clear before the cars had been uncoupled, and shortly thereafter, while they were moving into the switch, the automobile cut around the first car after it had passed into the switch; that he heard a crash and upon examination found the automobile had struck the pole. He recognized Genovese as being there that night, and had a conversation with him after the accident. He was then asked by counsel for appellant what that conversation was, and counsel, in response to a question from the court, stated it was not offered as a part of the *res gestae*. The action of the court sustaining the objection is the subject of the first execption. We find in this no error, since any statement he then had made would in our judgment not have been admissible unless a part of the *res gestae*. See *State v. Norfolk & Western Ry. Co.*, 151 Md. 679, 681, 135 A. 827.

The same witness was then asked, "If lights are placed

on moving cars, isn't it a fact that they are placed either at the front or rear of the car?" The court sustained an objection to this question, and this ruling brings about the second exception. He was next asked, if a light had been placed at the end of the first car moving into the switch, whether that would have been any precaution in favor of a person driving an automobile east on Pratt Street after the railroad car had started to make the turn. The court sustained an objection to this question, and this raises a third exception. As plaintiff had previously been permitted to offer testimony tending to prove that the cars moving into the switch were unlighted, these exceptions in our judgment are well taken, and, the question being proper, the court erred in sustaining objections to them.

Counsel for plaintiff then offered, over objection of defendant, a part of section 7 and the whole of sections 8 and 18 of article 39 of the Baltimore City Code (1927 Ed.), and from this action arises the fourth exception. The sections so admitted read as follows:

"7. No passenger or burden car shall be driven on any of the railways within the city limits, (except in ascending the heavy grades of streets, which may require a greater speed, when the rate shall not exceed six miles an hour), at any faster gait than a walk. * * *

"8. It shall be the duty of every person having charge of or driving any cart, dray, wagon or other carriage, which shall be passing on or along any street in which any railway is or shall be laid within the city, to travel or pass only on the right hand side, between the curb stone and the track of the railway, except when prevented by some obstruction in the street, or when it shall be necessary, for any sufficient cause, to cross or pass over such railway to the opposite side.

"18. No cars with or without horse power, shall, under the same penalty imposed by Section 15, be propelled at a greater speed than four miles an hour, within the City of Baltimore, unless attached to engines, as provided for in Section 15."

It is contended by appellant that these ordinances were inadmissible, because obsolete and outmoded, having been passed practically a century ago, when conditions differed materially from those of the present day; that their admission was erroneous and injurious, because they were conflicting; one prohibiting a gait faster than a walk, which is too indefinite, and another (section 18) fixing a speed at four miles an hour, and, further, because the rate of speed prescribed in section 18 excepts from its operation cars attached to engines "as provided for in section 15," the latter section not having been introduced in evidence.

In *Balto. & O. R. Co. v. Welch*, 114 Md. 536, 543, 80 A. 170, this court, in dealing with section 14 of article 30 of the Baltimore City Code, which required a locomotive, when used within the city limits, to have a man riding on its front when going forward, and on its tender when going backward, said that the section in question had been held to be practically obsolete and inoperative, citing the case of *Balto. & O. R. Co. v. Mali*, 66 Md. 53, 59, 5 A. 87, and *State, use of Harvey, v. Balto. & O. R. Co.*, 69 Md. 339, 346, 14 A. 685, 688, and the admission of the section in question was erroneous. That decision, made in 1911, as well as the earlier cases cited therein, took the position that this particular ordinance was not admissible, because not applicable to conditions at that time, and the reasoning there applied would seem to apply even more strongly at this time.

In *State v. Maryland Electric Rys. Co.*, 124 Md. 434, 92 A. 961, this court held that the ordinance in question did not apply, and was not intended to apply, to electric cars, and in view of the particular language of section 7, showing it was passed in an age of horse-drawn vehicles, it would be unreasonable to hold it applicable to the situation we are now considering, and this also applies to section 8, passed at the same time.

However, the reasons which compel this conclusion with reference to sections 7 and 8 do not apply to section 18, passed at a later date, which deals with cars with or

without horse power, and fixes their speed unless attached to engines. Therefore, the exception provided in section 18 in favor of cars attached to engines, as provided in section 15, was properly not before the jury, since plainly it could not apply to unattached cars. It is equally clear that this section was intended to apply to freight cars being moved over the streets of the city when unattached to engines, and while it may be conceded that the speed of four miles per hour therein provided for is not in keeping with the present age, still this regulation seems to be a matter for the municipality, and not this court, to deal with. See *Balto. & O. R. Co., v. Mali, supra.* It follows that while section 18 was admissible, there was error in the admission of sections 7 and 8.

The fifth exception concerned the action of the court in permitting the witness Steiner to state there was no light on the freight car left attached to the engine. This action in our judgment was erroneous. Since the car attached to the engine was located upon the Belt Railway, and in no manner connected with the accident, any inquiry as to whether lights were or were not upon it was immaterial. There was, however, no error in the sixth exception, by which the same witness was permitted to state he saw no lights upon the two loose cars, as these were involved in the accident and their condition with reference to lights was a relevant inquiry.

The refusal of the trial court to admit in evidence a certificate of the commissioner of motor vehicles containing the record of Genovese as a driver of automobiles, caused the seventh exception, and we find no error in this action, in view of the fact that the appellant admitted its inability to show that Carbone had knowledge thereof.

The witness Bentz had testified for appellant that shortly before the accident he was driving an automobile east on Pratt Street, accompanied by Miss Kramme, when, at a point estimated by him to be 700 feet west of the scene of the accident, the car driven by Genovese passed him and its rapid speed attracted his attention, whereupon he remarked to his companion: "It must

be a fool in there or a maniac, one of the two." The remark was stricken out on motion of plaintiff, and the court's action in respect thereto forms the eighth exception, while the ninth relates to the striking from Miss Kramme's testimony of a statement that Bentz made such remark to her. It is argued by appellant that the statement alleged by these witnesses to have then been made by Bentz was admissible as a part of the *res gestae.*

Text-writers and jurists are in accord that statements, to be within the rule, must register the unreflecting and sincere expressions of a person's belief, thereby becoming "natural," "impulsive," or "instinctive," and for this reason are received with assurance of a certain degree of trustworthiness. 3 *Wigmore on Evidence* (2nd Ed.) pars. 1749-1755; 10 *R.C.L.* page 980; *Field v. North Coast Transp. Co.,* 164 Wash. 123, 2 P. (2nd) 672, 76 A.L.R. pages 1114-1129. But, notwithstanding this uniformity of definition, much difficulty arises in the application of the facts of given cases to this principle. In this case both witnesses testified to all they knew as to the speed at which Genovese at that time was driving, and their remarks, made some distance from the scene of the accident and some time previous to it, out of the presence of the actors, could only have been received for the purpose of corroborating and further strengthening the testimony given by them. This would not be a ground for excluding their utterances to each other if admissible as a part of the *res gestae,* but we conclude that they were at most mere expressions of opinion, and were, therefore, as one jurist has said concerning such, a case of witnesses speaking the facts, rather than having the facts speak to the witnesses. There was no error in their exclusion.

The tenth exception was taken by appellant to the refusal of the court to strike out the ordinances mentioned in the fourth exception, and is disposed of by what we have said in dealing with the fourth.

The eleventh brings us to a consideration of the prayers offered by the parties.

The plaintiff's first granted prayer was as follows: "If

the jury believe from the evidence that the defendant, B. & O. Railroad Company allowed two of its cars to run by their own momentum and without any brakeman or other attendant on said cars, on Pratt Street, a public thoroughfare of the City of Baltimore, in the night time, and without any lights on said cars, if the jury so find, and if the jury further find that said cars were allowed to move at a greater speed than that allowed by law, if the jury so find, and if the jury believe taking into consideration all of the circumstances attending the movement of said cars as shown by the evidence; that the B. & O. Railroad Company was negligent in so allowing said cars to be run, then if the jury further believe that such negligence on its part contributed to cause the happening of the accident complained of, the verdict of the jury must be for the equitable plaintiff as against the defendant, B. & O. Railroad Company unless the jury further find that the plaintiff's decedent directly contributed to the happening of the accident by some act of negligence on his part."

If it be conceded that the jury was permitted to find negligence on the part of appellant without any previous requirement of finding sufficient facts from which such negligence could be determined, this is not before us, since no objection to the prayer for this reason was made in the court below (Code, art. 5, sec. 10; *Turner v. Eagan,* 116 Md. 35, 39, 81 A. 877), and our conclusion as to whether or not the prayer is a proper one must depend upon whether it violates the established rule with reference to segregating and giving undue prominence to certain facts, or submits an unsound proposition of law. It will be observed that the prayer emphasizes (a) the two cars running by momentum across a public street (b) without attendant (c) in the night time (d) without any lights, and (e) at a greater speed than that allowed by law, and notwithstanding the cars were plainly visible after starting the movement into the switch, that the area surrounding them was brilliantly lighted, the jury by this prayer may have well concluded that if they were

moved in the night time without lights, the defendant was guilty of negligence. It also emphasizes the non-existence of a brakeman upon them, whereas there is evidence in the case which, if believed by the jury, might have enabled them to find that the defendant took proper precautions to see that the street was clear before uncoupling the cars by stationing the flagman with a lantern up the street a sufficient distance from the switch to warn persons of the movement, and that a timely warning was given by him. Thus from the undisputed evidence in the case it is quite possible that the absence of lights upon the cars and their running without a brakeman in the night time at a speed in excess of four miles per hour may not have caused the accident, and the prayer is faulty in segregating for the jury's consideration these undisputed facts, and allowing a recovery if they found them to exist. The controversy arises, not because of the existence of the facts mentioned in the prayer, but as to their importance in connection with other admitted facts existing at that time and place, all of which were left out of consideration by this instruction, and we know of no case in which it has been held that such an objection was cured by the phrase "taking into consideration all of the circumstances attending the movement," etc. It is true that prayers containing such phrases have been approved, but only when the facts called to the jury's attention, if found by them to exist, would of themselves have justified a finding of negligence. The prayer as granted entirely ignored appellant's theory of the case. *Goodman v. Saperstein,* 115 Md. 678, 684, 81 A. 695; *Turner v. Eagan,* 116 Md. 35, 37, 81 A. 877; *Dolby v. Laramore,* 121 Md. 618, 624, 89 A. 442; *Whisner v. Whisner,* 122 Md. 195, 207, 89 A. 393; *Bluthenthal & Bickart v. May Advertising Co.,* 127 Md. 277, 96 A. 434; *Balto. & O. R. Co. v. Engle,* 149 Md. 152, 161, 131 A. 151; *Caroline County v. Beulah,* 153 Md. 221, 228, 138 A. 25.

Moreover, the instruction is objectionable for permitting a recovery merely because the ordinance of the City of Baltimore was violated by the defendant without re-

quiring a finding that the violation caused the injury. *Kelly v. Huber Baking Co.*, 145 Md. 321, 334, 125 A. 782, and cases there cited; *Meese v. Goodman*, 167 Md. 658, 664, 176 A. 621, 623. In the case last cited, Judge Sloan, speaking for this court, said: "The plaintiff's whole argument against Rullman implies that the accident happened because of his violation of the statutory rule of the road, though the mere violation of a statute or ordinance is not evidence of negligence, unless the violation of the statute or ordinance was the proximate cause of the accident."

No error is found in the other instructions granted at the request of the plaintiff.

The defendant's sixth prayer, which was rejected, is as follows: "The Defendant, Baltimore & Ohio Railroad Company, prays the Court to instruct the jury that if they find from the evidence, that, preliminary to the movement of the freight cars mentioned in the evidence on to the switch leading into Pier Two the brakeman Mewshaw was stationed 75 to 100 feet west of the switch-point mentioned in the evidence and in that portion of the bed of Pratt Street which lies between the south rail of the track on which defendant's train was operating and the south curb of Pratt Street, and if they further find that said Mewshaw signalled the approaching automobile operated by Santo Genovese to stop, in time for said Genovese to have stopped said automobile, or otherwise to have controlled it so that the accident would have been averted had the said Genovese been exercising due care and vigilance in the operation of said automobile, if they so find, then the plaintiff is not entitled to recover against this defendant and their verdict must be for the defendant, the Baltimore & Ohio Railroad Company." Its rejection was proper, since it imputed the negligence of Genovese, the driver, to Carbone, without submitting for a finding by the jury any facts which would make the negligence of the driver attributable to the deceased. As presented, this prayer was directly in conflict with the plaintiff's third prayer. *State v. Norfolk & Western Ry.*

*Co.,* 151 Md. 679, 688, 135 A. 827, and cases there cited; *Gordon v. Opalecky,* 152 Md. 536, 552, 137 A. 299.

The defendant's fifth and eighth prayers, as offered, are subject to the same criticism as its sixth, and were properly rejected; also its first prayer, which was a demurrer to the evidence, was properly rejected.

We have also considered the seventh prayer of appellant, which was rejected, and while it states a correct proposition of law, we are not satisfied of the legal sufficiency of evidence in the record to support its hypothesis. Its rejection, therefore, was proper. *Bluthenthal & Bickart v. May Advertising Co.,* 127 Md. 277, 283, 96 A. 434; *State v. Norfolk & Western Ry. Co.,* 151 Md. 679, 135 A. 827.

Because of the errors indicated in rulings upon the evidence and the plaintiff's first prayer, the judgment must be reversed for a new trial.

*Judgment reversed, with costs to appellant, and case remanded for a new trial.*