## LUCIANO L. FERRENTE v. STATE OF MARYLAND

[No. 51, Initial Term, 1967.]

*Decided May 29, 1967.*

The cause was argued before ANDERSON, MORTON, and ORTH, JJ., and MACGILL, J., Chief Judge of the Fifth Judicial Circuit, specially assigned, and JENIFER, J., Associate Judge of the Third Judicial Circuit, specially assigned.

*Alan H. Murrell* for appellant.

*Loring E. Hawes, Assistant Attorney General,* with whom were *Robert C. Murphy, former Attorney General,* and *Charles E. Moylan, Jr., State's Attorney for Baltimore City,* on the brief, for appellee.

PER CURIAM.

The appellant, Luciano L. Ferrente, was convicted of murder in the second degree in the Criminal Court of Baltimore by a jury (Judge Joseph L. Carter presiding) on January 18, 1966, and sentenced to eighteen years in the Maryland Penitentiary. From his conviction and sentence he now appeals to this Court.

On April 17, 1965, at approximately 12:30 a.m., Officers John G. Wlasic and Francis McHugh of the Baltimore City Police were called to the first floor of 1430 S. Hanover Street where they were met by the appellant who was partially dressed in trousers and tee shirt and whose right hand appeared to be swollen. When the police officers entered the apartment they found the body of a woman, later identified as June Endley Bealmear, lying dead across the bed in the middle room completely nude with a spread partially covering her body. The bedroom and kitchen were in complete disorder with clothing over the floor, lamps knocked over, blood on the doors, walls, sheets and pillowcases, indicating a desperate struggle by the deceased with her assailant. The autopsy revealed the cause of her death included lacerations of both eyes, a broken nose, fracture of the upper jaw, fracture of ribs, aspiration of blood and tears of the abdomen and the inner lining of the rectum. On the kitchen table there was also found a pint bottle of whiskey with a small amount remaining.

Upon their arrival the officers talked with the appellant and asked him if the victim was his wife, and were told she was his girl friend. The officers testified that they were also told by the appellant that he got off work at 8:30 p.m., and that he came home at 9:30 p.m. and found his girl friend lying on the back steps, and further that when they asked the appellant why he didn't call the police he said he didn't need the police but that he wanted an ambulance. The ambulance was at the

apartment when the officers arrived and the body was removed shortly thereafter. Officer Wlasic further testified that when he first saw appellant he was very calm and did not appear to have been drinking. Appellant was taken to the Southern District Police Station and was later taken to the hospital for x-ray of his hand, after which he was returned to the police station.

At approximately 10:30 a.m., April 17th, Captain Bowen, Commander of the Southern District Police Station, interrogated appellant and allegedly secured an oral statement from him. No notes were taken of the interrogation and Captain Bowen, at the trial, relied entirely upon his memory as to what appellant allegedly told him. The court, over appellant's objection, permitted the Captain to relate the alleged oral statement of appellant in its entirety, but later instructed the jury to strike from its consideration any reference to certain portions of this statement. At the close of the State's case, the court granted a motion for judgment of acquittal of murder in the first degree and permitted the case at the close of all the evidence to go to the jury on the possible verdict of second degree murder and manslaughter. The jury returned a verdict of murder in the second degree.

Appellant's sole contention on appeal is that the court committed a reversible error by permitting the oral statement of appellant as allegedly related to Captain Bowen to be admitted into evidence.

Shortly after appellant's indictment his counsel, pursuant to Maryland Rule 728, filed a motion for discovery and inspection, paragraph four of which requested that the State furnish the defendant with the substance of any oral confession made by him which the State proposed to introduce as evidence to prove its case in chief, with the further request that the State in its answer furnish the defendant with complete information as to where, when, to whom and under what circumstances such alleged oral confession was made. The State filed a lengthy answer to the defendant's motion in which it was stated that:

"The defendant told the investigating police officers that Miss Bealmear was his ladyfriend and that he had taken off half a day from his job at the Maryland Drydock, Fairfield, Maryland, getting off at 8:30 p.m. on April 16, 1965. From his job he dropped by his house at 1623 S. Hanover Street, which he occupies with his wife and four children. He then proceeded to Palmer's Tavern, Hanover and Fort Avenue, where he bought whiskey and soda. He then walked to the victim's home, arriving there at 9:30 p.m. He entered her apartment, discovered that she was not home, had a couple of drinks and heard a noise, he opened the rear kitchen door and found the victim beaten and bleeding, sitting on the back steps. He pulled her into the kitchen and then into the bedroom, took off her clothes and doused her with water to revive her. After unsuccessfully trying to revive her, he called an ambulance. He was asked why he had waited so long to call an ambulance and police and why he didn't call at 9:30 p.m. instead of 12:30 a.m., and he replied he didn't want police."

When Captain Bowen was called to the witness stand he testified that he had been on the police force for thirty-one years, a Captain for twelve years and in charge of the Southern District for eight years, and that when he questioned the defendant at 10:30 a.m. on April 17th, 1965, no promises or offers of immunity or any other inducements were made to the defendant in order to obtain his oral statement and that his statement was freely and voluntarily made. Captain Bowen's recollection of the statement was, in substance, exactly the same as that contained in the State's answer except for the fact that appellant also tried to revive the victim by dousing her in a bathtub and when that did not work he then placed her on her bed.

Appellant's point is that the failure to state that she was also placed in a bathtub to revive her was a deliberate and devastating omission on the part of the State which at the time would have indicated for all practical purposes that in-

haling water might have been a contributing cause of her death. At the time the statement was given the defense objected and moved that the entire testimony of Captain Bowen be stricken. At a bench conference the Assistant State's Attorney admitted that although he had previously talked to Captain Bowen he had not told him of the incident of placing the victim in the bathtub and this was the first time that the State was aware of it. It was Captain Bowen's recollection that he had told the State's Attorney about the bathtub incident, but he later testified that he may not have done so.

After a careful consideration of the appellant's objection to Captain Bowen's entire testimony, Judge Carter struck out the portion of his testimony relating to the bathtub incident, but allowed the balance of his testimony to stand. He gave the jury complete instructions that they were to disregard Captain Bowen's testimony relating to the bathtub incident, but that they could consider his remaining testimony.

It is this Court's opinion that appellant's argument would have far more weight if there was any evidence that the victim died as a result of drowning. On the contrary, Dr. Petty in his autopsy report and in his testimony stated that he would not consider aspiration of water to be a cause of death of the victim and it is therefore difficult for this Court to see how the reference to the bathtub incident could in any manner prejudice the appellant. Among the numerous causes of death as set forth in the autopsy report was aspiration of blood but not water. In actuality the victim in this case had been literally beaten to death.

We, therefore, hold that the appellant was in no wise prejudiced by the bathtub incident as testified to by Captain Bowen. Substantially the State complied with the appellant's request. Rule 728 a. 2 and the cases construing the same require only that the defendant be furnished the substance of any oral statement made by him which the State proposes to produce as evidence, but the statement need not be set forth verbatim. *Johnson v. State,* 232 Md. 199, 192 A. 2d 506 (1963); *Mayson v. State,* 238 Md. 283, 208 A. 2d 599 (1965). Where the State did in fact furnish the substance of

the oral statement as made to Captain Bowen, it is difficult to see how the appellant was prejudiced by the alleged omission, and if, in fact, there was an error in allowing the jury to hear it, the same was cured by the court's clear instructions to the jury striking out that portion of the statement relating to the bathtub incident.

*Judgment affirmed.*