STATE OF MARYLAND, For the Use of Helen A. Morrow, *vs.* WASHINGTON, BALTIMORE AND ANNAPOLIS RAILWAY COMPANY.

*Railroad Crossing Accident—Contributory Negligence—Evidence—Cross-Examination.*

A witness for plaintiff having testified that at the place of the accident the view was obstructed by three or four telegraph poles almost in a line, it was proper to allow him to be asked, on cross-examination: "And there is a one hundred foot train coming around there and that one hundred foot train would be

hidden behind four or five telegraph poles, and is that your testimony?" pp. 287, 288

The uncontradicted testimony of plaintiff's witnesses showing that the train was within sight of plaintiff's decedent when he was ten or fifteen feet off the track, that he drove on the track without stopping, that if he had looked before going on the track he must have seen the rapidly approaching train, and that if he had stopped and listened he must have heard it, an instruction that the jury find for defendant was proper.

pp. 288, 289

One approaching a railroad crossing in the open country is under a duty to look and listen until he reaches the track, and to stop, as well as look and listen, if the view of the track in either direction is obstructed, and one failing to take such precaution is guilty of contributory negligence as matter of law.

p. 289

Where the uncontradicted evidence shows that the approaching train was in full view of one at the time of his reaching the crossing, so that, if he had stopped and looked, he must have seen it, and if he had listened, he must have heard it, in time to avoid injury, there can be no recovery on account of his injury or death. p. 289

The motorman on an interurban train has a right to assume that one whom he sees slowly approaching a crossing in a motor truck, at a distance of ten or fifteen feet from the track, will stop before he reaches the track. p. 290

*Decided February 29th, 1924.*

Appeal from the Court of Common Pleas of Baltimore City (AMBLER, J.).

Action by the State of Maryland, for the use of Helen A. Morrow, widow of William J. Morrow, against the Washington, Baltimore and Annapolis Railway Company. From a judgment for defendant, plaintiff appeals. Affirmed.

The cause was argued before BOYD, C. J., THOMAS, PATTISON, URNER, ADKINS, OFFUTT, and DIGGES, JJ.

*Isaac Lobe Straus, Leonard Weinberg,* and *Howard A. Sweeten,* submitting on brief, for the appellant.

*George S. Yost,* with whom were *Carlyle Barton* and *Niles, Wolff, Barton & Morrow,* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

This is another railway crossing accident in the open country.

The suit was brought by Helen A. Morrow, the surviving widow of William J. Morrow, who was killed in attempting to cross the tracks of the Washington, Baltimore and Annapolis Railway Company, at Earleigh Heights Station, in Anne Arundel County.

It was a southbound train of two cars running between forty and fifty miles an hour. The deceased was approaching the crossing from the east in a truck, at a rate of speed variously estimated at from five to twelve miles an hour, and did not stop until the front wheels of the truck were about eighteen inches over the east rail. The train was then only about twenty-two and a half yards from the crossing. Two witnesses for the plaintiff who were on the train testified as to seeing the truck before the accident. About one hundred and ten or one hundred and twenty-five yards from the crossing there is a curve in the track. There were no obstructions except telegraph poles north of the crossing between it and the curve. One of the witnesses, Porter, was asked: "From that point" (fifteen feet east of the crossing), "was there anything between where the automobile was and the train, when you on the train first saw the automobile (the witness had previously testified this was ninety yards) to have obstructed the vision from the automobile of the approaching train? A. That is, from the automobile? I am standing where the automobile is supposed to be? Q. Yes? A. Well there are three or four telegraph poles there that almost get in line and make almost a solid front there. Q. But this train has two cars on it? A. Yes, sir. Q. Do you know how long the car is? A. Not positively. I was looking them

over and I judge them to be almost fifty feet. Q. Then, two
cars would be about one hundred feet? A. Yes, sir. Q.
And there is a one hundred foot train coming around there
and that one hundred foot train would be hidden behind
four or five telegraph poles, and is that your testimony?"

The second exception was to requiring the witness to an-
swer that question. It was on cross-examination, and was a
perfectly proper question. There was no error in this rul-
ing.

The witness' answer was that he didn't think it would be
hidden; that the poles were there and lined in such a man-
ner that they would obstruct the view somewhat, but not en-
tirely hide the train, of course.

This witness placed the truck ten feet or less from the
track when he first saw it.

The other witness, Feder, said he first saw the truck when
the train was "about less than one hundred feet from the
crossing"; that the machine was about fifteen feet from the
tracks; that he didn't see the machine until they were almost
on it, and that it may have been less than fifteen feet from
the track.

Both witnesses testified that the truck did not stop until
the front wheels were about eighteen inches over the east
rail and that then the train was so close that the collision
was inevitable.

There were only two bills of exception in addition to the
one already mentioned. The first was to overruling a ques-
tion of defendant on cross-examination. The question does
not appear from the record to have been answered, so there
could have been no harm done. But, in any event, it was a
proper question on cross-examination.

The third bill of exception was to the granting of defend-
ant's prayer, which instructed the jury to find for defendant
on the ground of contributory negligence. There was no
error in this ruling.

It is perfectly apparent from the uncontradicted testi-
mony of plaintiff's witnesses that the train was within sight

of plaintiff's decedent when he was ten or fifteen feet off the track, and that he drove on the track without stopping; that if he had looked before going on the track he must have seen the rapidly approaching train, and if he had stopped and listened he must have heard it. If the view was obstructed by the telegraph poles it was his duty not only to look and listen, but to stop. This he did not do. It was his duty to continue to look and listen until he reached the track.

It is useless to prolong this opinion by further discussion, as we have so often decided all the questions involved. Only a few cases will be cited as illustrations: *Glick* v. *Cumberland & Westernport Electric Ry. Co.,* 124 Md. 308; *Siejak* v. *United Rwys.,* 135 Md. 367; *Evans* v. *Balto., C. & A. Ry. Co.,* 133 Md. 31; *Phila., W. & B. R. R. Co.* v. *Hogeland,* 66 Md. 149; *State, use of Manfuso,* v. *Western Md. R. Co.,* 102 Md. 257; *Annapolis, W. & B. R. Co.* v. *Hickox,* 104 Md. 659.

Special stress is laid by appellants on the two recent appeals in *Wash., B. & A. Ry. Co.* v. *Goodwin,* reported in 137 Md. 538, and 140 Md. 115. On the last appeal we said, referring to the earlier case: "It is true we went very far in disposing of the case on that appeal, to avoid a decision which would have involved a withdrawal of the case from the jury."

The earlier *Goodwin* case cannot be taken as a precedent in so far as it tends to modify the long established rule, in this and in other jurisdictions, that it is the duty of one approaching a railroad crossing in the open country to look and listen until he reaches the track about to be crossed; and to stop, as well as look and listen, if the view of the track in either direction be obstructed; and that one failing to take such precaution is guilty of contributory negligence as a matter of law; and that where the uncontradicted evidence shows that the approaching train was in full view of one, at the time of his reaching the crossing, so that, if he had stopped and looked, he must have seen it, and if he had listened, he

must have heard it, in time to avoid injury, there can be no recovery.

The last clear chance doctrine invoked by appellant has no application to the facts of this case.

There is no testimony that the motorman saw, or ought to have seen, the truck after it was in danger, in time to have avoided the accident. If he saw it when the witnesses saw it, moving very slowly, at a distance of ten or fifteen feet from the track, he had a right to assume that the driver would stop before he reached the track. *Maryland Central R. R. Co. v. Neubeur,* 62 Md. 391; *McNab v. United Rys. Co.,* 94 Md. 719; *State, use of Silver, v. Phila., B. & W. R. Co.,* 120 Md. 65.

Finding no error in any of the rulings below, the judgment will be affirmed.

*Judgment affirmed, with costs to appellee.*