577 A.2d 356

Jerry SMALLWOOD, Jr.

v.

STATE of Maryland.

No. 141, Sept. Term, 1989.

Court of Appeals of Maryland.

Aug. 6, 1990.

Mark Colvin, Asst. Public Defender (Alan H. Murrell, Public Defender, Nancy S. Forster, Asst. Public Defender, all on brief), Baltimore, for petitioner.

Jillyn K. Schulze, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and CHASANOW, JJ.

COLE, Judge.

In this case we are asked to determine whether the trial court erred when it refused to allow cross-examination of a

witness as to the outcome of charges she had filed against Petitioner on two previous occasions. Because we believe that the questions were intended to uncover prejudice and bias on the part of the witness, we conclude that it was reversible error for the court to prohibit cross-examination on this point.

The circumstances surrounding the crime and Petitioner's prosecution are essential to an understanding of the context in which the cross-examination was attempted. On Thursday, April 9, 1987, Charles G. Piercy was making a delivery to The Gap, a clothing store in Landover Mall specializing in jeans. He was informed that an individual, later adjudged to be Petitioner, was taking boxes out of his truck. Piercy confronted the man and demanded the return of the boxes. The individual struck Piercy and drove off with a number of boxes of merchandise. Piercy provided police with the license tag number of the car and later identified Petitioner from an array of six color photographs.

The police traced the car tags to Demetria Lomax, Petitioner's ex-girlfriend. The police questioned Ms. Lomax on June 12, 1987, the same day on which Ms. Lomax broke up with and filed assault charges against Petitioner. At trial in the Circuit Court for Prince George's County, Ms. Lomax testified that she had loaned her car to Petitioner each weekday during the month of April, 1987, and that on one Thursday in April, Petitioner had failed to pick her up from work. Later that same Thursday night, Ms. Lomax testified, Petitioner presented her with some clothing which still bore price tags from The Gap.

On cross-examination, Ms. Lomax was questioned regarding the warrant she swore out against Petitioner on June 12, 1987. When the questioning reached the disposition of this assault charge, the following occurred:

Q. [By DEFENSE COUNSEL] And Mr. Smallwood was found not guilty of that assault in court, was he not?
ASSISTANT STATE'S ATTORNEY: Objection.
THE COURT: Sustained.

BY [DEFENSE COUNSEL]

Q. Do you recall coming in—

ASSISTANT STATE'S ATTORNEY: Your Honor, may I interrupt? All I want is a cautionary instruction that a finding of not guilty does not necessarily mean he was not guilty.

THE COURT: Well, it's not relevant to this proceeding. I interrupted Mr. Neal in his opening statement and I made comments about it at that time. My feelings are still the same and if counsel still wants to proceed, then I'm going to have to take some sort of sanction, but it's not necessary for him to proceed to protect his record.

DEFENSE COUNSEL: Thank you, Your Honor. Perhaps I can approach the bench to [explain] what I think is a legal basis for it.

THE COURT: Not at this time.

DEFENSE COUNSEL: I would object.

&ast; &ast; &ast; &ast; &ast; &ast;

Q. [BY DEFENSE COUNSEL] And that's not the only occasion that you have charged him with an offense against you, is it?

A. No, it isn't.

Q. What happened on that occasion? What was the final disposition on that case?

ASSISTANT STATE'S ATTORNEY: Your Honor, I would object.

THE COURT: Sustained.

ASSISTANT STATE'S ATTORNEY: Not to the charge, but the final disposition, that it is not relevant and it doesn't indicate—

THE COURT: I have already ruled.

ASSISTANT STATE'S ATTORNEY: Thank you, Your Honor.

Petitioner was convicted of robbery and sentenced to ten years. He appealed and the Court of Special Appeals affirmed the conviction in an unreported opinion. We

granted certiorari in order to address the important issue involved.

Petitioner maintains that it was prejudicial error for the court to prevent him from cross-examining a witness about matters which affected the witness's bias, interests, or motive to lie. Petitioner was not attempting to introduce evidence of the absence of convictions on the previous charges in order to prove his innocence of the instant charges nor to attack the witness's veracity. Rather, Petitioner sought to demonstrate to the jury that the witness's motivation for testifying as she did in the instant case stemmed from her failure to obtain convictions in the previous cases. Petitioner claims that it was the witness's vindictiveness which moved her to testify against him and that he had a right to demonstrate this prejudice to the jury so that the jurors could accurately weigh the witness's testimony.

Petitioner considers the weight given to Ms. Lomax's testimony to be crucial in light of the questionable identification of the criminal agent by Mr. Piercy from a photo array. Mr. Piercy testified at trial that he was initially shown six black-and-white pictures by the police detective investigating the case. From these six photos, Mr. Piercy testified, he picked one as possibly being the person who robbed and struck him. The police detective, however, testified that Mr. Piercy picked two photos from the black-and-white array as possibly looking like the perpetrator. One of these photos was of Petitioner. The detective later showed Mr. Piercy another photo array containing six color pictures. The detective testified that he repeated only the picture of Petitioner in the second photo array even though Mr. Piercy had selected two photos from the black-and-white array. Mr. Piercy again selected Petitioner's photo, but at no point was Mr. Piercy absolutely certain that the individual in the picture was the man who robbed him.

There was also testimony presented that Petitioner was not the only individual who drove Ms. Lomax's car during the month of April, 1987. Petitioner's brother testified that

he had driven the car himself on several occasions. Petitioner contends that all of these facts raise doubts about the identity of the robber, and that the jury should have been exposed to Ms. Lomax's bias before it reached a guilty verdict based on her testimony.

The State counters by asserting that trial judges have broad discretion regarding the scope of cross-examination and that absent an arbitrary or capricious decision, such discretion should not be disturbed. The State maintains that the court was concerned that an extended digression into irrelevant charges filed against Petitioner would confuse the jury and obscure the issues which it had to decide. The State persists that sufficient evidence of the witness's possible prejudice or bias had already been presented and therefore any further discussion of the point was unnecessary.

Furthermore, according to the State, if the curtailment of the cross-examination was error, it was harmless error. The State cites two of our cases, *State v. Collins*, 318 Md. 269, 568 A.2d 1 (1990), and *Bruce v. State*, 318 Md. 706, 569 A.2d 1254 (1990), as illustrative of the premise that curtailment of cross-examination can be harmless error. Regarding the instant case, the State maintains that the witness's testimony was of minimal importance to the prosecution and that evidence of her bias had already been presented to the jury.

In *Collins*, the testimony of an accomplice contributed to the defendant's conviction. The trial judge limited the evidence which could be introduced regarding drug charges pending against the accomplice. We ruled that this limitation did not constitute reversible error because the accomplice's plea agreement with the State had been thoroughly outlined on direct examination. We concluded that the jury had received ample evidence from other sources with which to judge the accomplice's credibility and possible bias. 318 Md. at 282, 568 A.2d at 7.

In *Bruce,* which also involved a plea agreement in return for testimony, we concluded that the exclusion of a photograph of one of the weapons found in the witness's possession did not prejudice the defendant. In fact, we held that the defendant had been given the opportunity to expose in some detail the nature of the charges which were being dropped in exchange for testimony. *Bruce,* 318 Md. at 728, 569 A.2d at 1265.

We have not previously addressed the specific situation in which a judge prohibits cross-examination regarding the outcome of unrelated charges made by a witness against a defendant. Reviews of the limits placed on cross-examination have, however, been undertaken by the United States Supreme Court and by the appellate courts of this state. *See State v. Cox,* 298 Md. 173, 468 A.2d 319 (1983) and cases cited therein. Using the pertinent Supreme Court decisions as a guide, there has evolved a standard analytical framework for Maryland courts to follow when confronted with this situation.

In *Delaware v. Van Arsdall,* 475 U.S. 673, 678–79, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 682–83 (1986), and *Davis v. Alaska,* 415 U.S. 308, 316–17, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353–54 (1974), the Supreme Court set forth the general principle that the confrontation clause of the Sixth Amendment affords defendants the right to cross-examine witnesses regarding matters which affect the witnesses' bias, interests, or motive to falsify. In *Franklin v. State,* 239 Md. 645, 212 A.2d 279 (1965), we held that the right to cross-examine in general is inherent in the right to confront witnesses. More specifically, in *Hopper v. State,* 64 Md. App. 97, 104, 494 A.2d 708, 712 (1985), the Court of Special Appeals held that Article 21 of the Maryland Declaration of Rights affords defendants in Maryland the right to cross-examine for matters affecting bias or prejudice to the extent provided by the Sixth Amendment. *See also, Brown v. State,* 74 Md.App. 414, 419, 538 A.2d 317, 319 (1988).

 The right to cross-examine is not without limits, however, and "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679, 106 S.Ct. at 1435, 89 L.Ed.2d at 683. Limitation of cross-examination should not occur, however, until after the defendant has reached his "constitutionally required threshold level of inquiry." *Brown*, 74 Md.App. at 419, 538 A.2d at 319. Stated another way, although the scope of cross-examination is generally limited to the subjects raised on direct examination, *State v. Consolidated Gas Electric Light & Power Co.*, 159 Md. 138, 150 A. 452 (1930), within that limit a defendant should be free to cross-examine in order to elucidate, modify, explain, contradict, or rebut testimony given in chief. *Wells v. State*, 236 Md. 381, 203 A.2d 912 (1964); *Johnson v. State*, 232 Md. 199, 192 A.2d 506 (1963); *Salisbury Coca–Cola Bottling Co. v. Lowe*, 176 Md. 230, 4 A.2d 440 (1939); *Baltimore & Ohio R. Co. v. State*, 169 Md. 345, 181 A. 830 (1935). It is also proper to cross-examine as to facts or circumstances inconsistent with testimony, *State v. Washington, B. & A. Ry. Co.*, 145 Md. 285, 125 A. 538 (1924), and to bring out the relevant remainder or whole of any conversation, transaction, or statement brought out on direct questioning. *DeLilly v. State*, 11 Md.App. 676, 276 A.2d 417 (1971). Finally, and particularly pertinent to the instant case, one should be allowed to cross-examine in order to determine the reasons for acts or statements referred to on direct examination. *Cumberland and Westernport Transit Co. v. Metz*, 158 Md. 424, 149 A. 4, *reargument denied*, 158 Md. 424, 149 A. 565, *appeal dismissed sub nom, American Oil Company v. Metz*, 282 U.S. 801, 50 S.Ct. 40, 75 L.Ed. 720 (1930).

 What emerges from this review of the applicable caselaw is a balancing test. A judge must allow a defendant wide latitude to cross-examine a witness as to bias or

prejudices, *Bruce,* 318 Md. at 727, 569 A.2d at 1265, but the questioning must not be allowed to stray into collateral matters which would obscure the trial issues and lead to the factfinder's confusion. *Cox,* 298 Md. at 178, 468 A.2d at 321.

A decision to limit cross-examination "does not fit within the limited category of constitutional errors that are deemed prejudicial in every case." *Van Arsdall,* 475 U.S. at 682, 106 S.Ct. at 1437, 89 L.Ed.2d at 685. *See Collins,* 318 Md. at 282, 568 A.2d at 7. An appellate court must therefore determine "whether, assuming that the damaging potential of the cross-examination were fully realized, ... the error was harmless beyond a reasonable doubt." 475 U.S. at 684, 106 S.Ct. at 1438, 89 L.Ed.2d at 686. This Court has previously set forth the standard for determining whether an error is harmless. In *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665, 678 (1976), we concluded that an error will be considered harmless if the appellate court is "satisfied that there is no reasonable possibility that the evidence complained of—whether erroneously admitted or excluded—may have contributed to the rendition of the guilty verdict."

We now turn our attention to the facts of the instant case. The witness in question, Demetria Lomax, was Petitioner's ex-girlfriend and the mother of Petitioner's child. At trial, and for the very first time, Ms. Lomax stated that on the night of the robbery, Petitioner presented her with some articles of clothing to which tags from The Gap were still attached. Petitioner claims he was surprised by this new evidence against him, and we see nothing improper with an attempt to uncover the motivation behind the witness's testimony. Ignoring the potential for prejudice inherent in any situation involving people who were romantically involved, Petitioner limited his cross-examination to the two separate charges which Ms. Lomax had previously filed against him. The judge permitted questioning about those charges but prohibited testimony regarding the outcome of those charges.

The rationale for this decision, as explained by the judge to defense counsel, was that the other charges were irrelevant to Petitioner's guilt or innocence in the instant case and that discussion of those other matters would have led to confusion on the part of the jurors regarding what they were to decide in the instant case. The judge concluded that the filing of the charges went to the witness's prejudice, but the outcome of the charges did not.

Petitioner maintained that the questions were asked in order to expose the witness's bias to the jury. Petitioner attempted to illustrate that Ms. Lomax had failed on two other occasions to have Petitioner convicted, and that she was using this opportunity to finally punish him for what she felt were unpunished wrongs committed against her in the past. Viewed in this light, we believe Petitioner should have been given the opportunity to further question the witness. Rationale for pursuing this course of inquiry has been enunciated by several courts. In *Davis*, 415 U.S. at 316–17, 94 S.Ct. at 1110, 39 L.Ed.2d at 354, the Supreme Court said:

[One form of] attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is "always relevant as discrediting the witness and affecting the weight of his testimony." 3A J. Wigmore, Evidence § 940, p. 775 (Chadbourn rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.

The Court of Special Appeals in a similar situation held that

[f]or purposes of cross-examination of a prosecution witness *in order to show bias or motive,*

[T]he crux of the inquiry insofar as its relevance is concerned, is the witness's state of mind. What is

essential to the preservation of the right to cross-examine is that the interrogator be permitted to probe into whether the witness is acting under a hope or belief of leniency or reward.

*Brown,* 74 Md.App. at 420–21, 538 A.2d at 320 (quoting *Fletcher v. State,* 50 Md.App. 349, 359, 437 A.2d 901, 906 (1981)) (emphasis added). To the last sentence in the quote we would add "or out of spite or vindictiveness."

In addition, the form and nature of the questions asked by Petitioner were entirely proper. In *Cox,* we concluded that

the inquiry had substantial probative force and there was no indication that defense counsel was harassing the witness by asking an unfounded question or seeking primarily to embarrass the witness.

298 Md. at 184, 468 A.2d at 324. The same holds true for the questions in the instant case which went to the "very heart" of Ms. Lomax's bias. *Id.*

█ Having concluded that the court should not have prohibited questioning regarding the outcome of the earlier charges, we now determine whether the exclusion of the evidence was harmless error. The State's case was based upon Mr. Piercy's identification of the person who stole boxes from his truck, Smallwood's exclusive use of Ms. Lomax's vehicle at the time of the robbery, and Smallwood's gift to Ms. Lomax of clothes with tags on them indicating that the clothes had come from The Gap.

Smallwood maintains that he had demonstrated a basis for the jury not to accept Mr. Piercy's identifications of him as the robber. Piercy could not positively identify him from either photo array, and the second photo array, was allegedly tainted because the officer had not included the photo of the other person selected by Piercy in the first array. As to Smallwood being the only driver of Ms. Lomax's car, this was refuted when Petitioner's brother admitted to driving her vehicle during the same critical period. At this point the evidence created a doubt, but the doubt would be

removed if Lomax's testimony that Smallwood had given her clothes with a Gap tag were allowed to stand.

Therefore, Smallwood insists, it was imperative that he be allowed to demonstrate that Lomax had a motive for lying and for sending him to prison. He claims that by proving that on two prior occasions she had attempted unsuccessfully to prosecute him, it would make her testimony suspect and therefore deny the State the additional evidence it needed to present to the jury evidence of his guilt beyond a reasonable doubt. Under these circumstances, Smallwood maintains that Lomax's unchallenged testimony bolstered the State's otherwise unconvincing case, contributed to the guilty verdict, and was, therefore, harmful.

We agree and therefore reverse.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PRINCE GEORGE'S COUNTY.

McAULIFFE, J., files a dissenting opinion.

McAULIFFE, Judge, dissenting.

I agree with the Court of Special Appeals that evidence of the disposition of earlier criminal charges brought by Demetria Lomax against the petitioner was, at best, marginally relevant to the issue of Lomax's biases against petitioner. Accordingly, I believe it was within the discretion of the trial judge to sustain the objection to questions concerning those dispositions. I would affirm the judgment below.