971 A.2d 965

**Adrian Devon ASHTON**

v.

**STATE of Maryland.**

**No. 3064, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

May 12, 2009.

608

Anne K. Olesen Assigned Public Defender of Washington, D.C. (Nancy Forster, Public Defender on the brief), of Baltimore, for appellant.

Susannah E. Prucka (Douglas Gansler, Attorney General on the brief), Baltimore, for appellee.

Panel: WOODWARD, MATRICCIANI and JAMES A., KENNEY, III, (Retired, specially assigned), JJ.

MATRICCIANI, J.

After a four-day trial in the Circuit Court for Prince George's County, a jury convicted appellant, Adrian Devon Ashton, on four counts: felony murder[1], robbery, robbery with a dangerous weapon, and the use of a handgun in the commission of a felony. He was sentenced on January 20, 2008, to life in prison for the felony murder and twenty years to run consecutively for the use of a handgun in the commission of a felony. The robbery and robbery with a dangerous weapon convictions were merged with the felony murder. Mr. Ashton noted this timely appeal on February 15, 2008.

---

1. The State indicted Mr. Ashton on first degree murder. Pursuant to Md.Code (2002) § 2–201(a)(4)(ix) of the Criminal Law Article (CL), "A murder is in the first degree if it is committed in the perpetration of or an attempt to perpetrate robbery under § 3–402 or § 3–403 of this article[.]" Thus, as we have stated, "a felony murder committed in the course of certain enumerated felonies (including robbery) is murder in the first degree." *Brooks v. State*, 104 Md.App. 203, 216–17, 655 A.2d 1311 (1995)(citing predecessor to CL § 2–201).

## ISSUES PRESENTED

Appellant presents four issues for our consideration.

I. The evidence was insufficient to support Mr. Ashton's conviction for felony murder.

II. The trial court erred by refusing to exclude DNA evidence after the State failed to comply with statutory conditions of admissibility.

III. The erroneous admission of DNA evidence forced Mr. Ashton to obtain a continuance past 180 days thus violating the *Hicks* rule.

IV. The trial court violated Mr. Ashton's constitutional right of confrontation when it barred the defense from cross-examining a key prosecution witness on matters related to the witness' bias and credibility.

For the reasons stated below, we shall affirm the judgments of the circuit court.

## FACTS AND PROCEEDINGS

On December 14, 2005, Anthony Brown was shot and killed in his girlfriend's Oxon Hill apartment. Mr. Williams, a neighbor, testified that on the day of the murder he heard gunshots and then saw two men exit the apartment across the hall from his apartment. Responding to the neighbor's 911 call, the police arrived on the scene and found Mr. Brown dead on the floor of the apartment. Meanwhile, two officers pursued a car seen leaving the scene and matching the witness' description of the car the two men used to leave the scene. After a lengthy pursuit, the car stopped and two men exited the car and started to run. The two officers testified that they stopped and got out of their cars. They pursued and arrested one of the men, Demetrius Daughtry, but they were unable to apprehend the other occupant.

The next day, following a lead, the police went to an address on Riverdale Road where they believed the other homicide suspect was staying. The suspect turned out to be Mr. Ashton. His cousin, Mr. Anderson, lived in a duplex at this

address. While they were canvassing, an officer observed a man matching the description of the suspect jump off a second story balcony connected to Mr. Anderson's residence. The police chased and arrested Mr. Ashton. He was placed in the police cruiser with his hands cuffed for transport to the police station. During the trip to the station, however, Mr. Ashton freed himself from the car and fled. He was arrested again the next morning.

The police learned that Mr. Ashton had stayed at his cousin's residence on the night of December 14, 2005. A search of the residence revealed a book bag containing guns and ammunition that Mr. Anderson testified did not belong to anyone living in the duplex.

Mr. Ashton was indicted on January 17, 2006. On April 3, 2006, he filed a demand for bill of particulars, a motion to dismiss, and a demand for discovery and inspection. The State filed an opposition to Mr. Ashton's motion to dismiss on August 2, 2006. In open court on September 5, 2006, the first scheduled day of trial, Mr. Ashton filed a supplemental motion for discovery requesting that the State produce DNA data in addition to the analysis produced by the State on August 31, 2006. At the hearing on this motion, Mr. Ashton's counsel stated that the day after the State delivered the DNA evidence he faxed a request to the State for additional DNA information. The State responded immediately and offered to hand deliver the documents to Mr. Ashton's counsel. Mr. Ashton's counsel refused the offer and instead agreed to wait until September 5, 2006, to receive the documentation. Thus, by the time the September 5, 2006 hearing commenced the State had already delivered the additional documents to Mr. Ashton. On September 5, 2006, Mr. Ashton also filed a motion in limine to exclude DNA evidence, a motion to exclude expert testimony, a motion to exclude ballistics testimony, and a motion to strike introduction of evidence pertaining to flight and/or escape. The court denied the motion to exclude DNA evidence and the motion to strike introduction of evidence pertaining to flight or escape. It chose to reserve its decision on the remaining motions. The court also considered Mr.

Ashton's request for a continuance related to the DNA discovery. The court granted the continuance and noted Mr. Ashton's waiver of Hicks.[2]

On May 1, 2007, Mr. Ashton's trial began and it concluded on May 4, 2007, when the jury convicted him of robbery, robbery with a deadly weapon, felony murder, and use of a handgun in the commission of a felony. On May 10, 2007, Mr. Ashton moved for a new trial. On October 15, 2007, Mr. Ashton entered a plea of not criminally responsible and not competent for the purposes of sentencing. The circuit court denied both of these motions on January 25, 2008. On the same day, the circuit court sentenced Mr. Ashton. He noted this appeal on February 15, 2008.

## DISCUSSION

### I.

■ Mr. Ashton contends that the State did not produce evidence sufficient to support his conviction for felony murder.
The standard of review for appellate review of evidentiary sufficiency is whether any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. We view the evidence in the light most favorable to the prosecution. We give due regard to the fact finder's finding of facts, its resolution of conflicting evidence, and, significantly, its opportunity to observe and assess the credibility of witnesses.

*Dukes v. State,* 178 Md.App. 38, 42, 940 A.2d 211 (2008) (citations and internal quotations omitted).

■ Md.Code (2002), § 2–201(a)(4)(ix) of the Criminal Law Article (CL) defines felony murder as: "A murder is in the first degree if it is committed in the perpetration of or an attempt to perpetrate robbery under § 3–402 or § 3–403[³] of

---

**2.** The date by which the State must bring a criminal defendant to trial is known as the *Hicks* date, referring to *State v. Hicks,* 285 Md. 310, 403 A.2d 356 (1979).

**3.** CL § 3–402 reads:

this article[.]" Robbery is not defined by the criminal code, but rather is defined by common law as "the felonious taking and carrying away of the personal property of another, from his person by the use of violence or by putting in fear." *Metheny v. State,* 359 Md. 576, 605, 755 A.2d 1088 (2000) (citations omitted). Further, there must be a larcenous intent, which requires "the fraudulent taking and carrying away of a thing without claim of right with the intention of converting it to a use other than that of the owner without his consent." *Id.* (emphasis removed).

Thus, to sustain the conviction for felony murder, the State must prove beyond a reasonable doubt that Mr. Ashton committed a robbery or attempted to commit a robbery, and that he committed a murder in the perpetration of the robbery or in the attempt to commit it. Further, as the Court of Appeals held in *State v. Allen,* 387 Md. 389, 396, 875 A.2d 724 (2005), the State must prove that Mr. Ashton's intent to commit the robbery arose "prior to, or concurrent with, the conduct resulting in death." In determining whether these elements were sufficiently proved at trial, we look to the appellate standard of review stated above and note that the ultimate determination of the defendant's intent is for the jury to decide. *See id.* at 405, 875 A.2d 724.

Mr. Ashton contends that no evidence was adduced concerning the formation of his intent to commit the robbery before or during the commission of the murder and thus, he cannot be found guilty of felonious murder. We disagree. During the trial in this case, evidence was presented that could support a conviction for felony murder. First, Mr. Williams testified that on the day of the murder, he was in his apartment which

---

(a) *Prohibited.*—A person may not commit or attempt to commit robbery.
(b) *Penalty.*—A person who violates this section is guilty of a felony and on conviction is subject to imprisonment not exceeding 15 years. CL § 3–403 reads:
(a) *Prohibited.*—A person may not commit or attempt to commit robbery under § 3–402 of this subtitle with a dangerous weapon.
(b) *Penalty.*—A person who violates this section is guilty of a felony and on conviction is subject to imprisonment not exceeding 20 years.

was located across the hall from where the victim was shot. He said that he heard what sounded like two men coming up the stairs and then he saw them enter the apartment across the hall. He further testified that he heard a scuffle ensue in the apartment and then a series of gunshots. After hearing the gunshots, he saw two men wearing ski masks (that covered their faces) exit the apartment carrying a grocery bag. The witness also testified that he saw something fall out of the bag, and later testimony revealed that the dropped package contained marijuana. Evidence was also presented that the officers found drugs in the apartment where the victim was killed. Next, an officer testified that a back pack containing four firearms, a .45 automatic cartridge, a power adapter, a t-shirt, marijuana, a dictionary, and a thesaurus was taken into evidence at the location where Mr. Ashton was initially apprehended. Mr. Anderson testified that the bag belonged to Mr. Ashton. Finally, the victim's girlfriend testified that the back pack taken into evidence contained items that belonged to the victim.

Despite the lack of direct evidence, a jury could still conclude that Mr. Ashton had the requisite intent based on the circumstantial evidence presented. *See Handy v. State*, 175 Md.App. 538, 562, 930 A.2d 1111 (2007) (stating that "[c]ircumstantial evidence alone is sufficient to support a conviction, provided the circumstances support rational inferences from which the trier of fact could be convinced beyond a reasonable doubt of the guilt of the accused." (citations and internal quotations omitted)). Further, we have held that "[i]ntent to steal is subjective; it need not be directly and objectively demonstrated, but may be inferred from a totality of the circumstances." *Wiggins v. State*, 8 Md.App. 598, 609, 261 A.2d 503 (1970) (citations omitted). Given the circumstantial evidence cited above, which suggests a motive to rob as well as the actual perpetration of a robbery, we conclude that the circuit court did not err in finding Mr. Ashton guilty of felony murder.

## II.

Mr. Ashton next contends that the trial court erred by refusing to exclude DNA evidence after the State failed to comply with statutory conditions of admissibility. The State counters that the trial court correctly exercised its discretion when it denied Mr. Ashton's motion to exclude DNA evidence because he had not complied with express statutory provisions.

Md.Code (1973, 2006 Repl.Vol.), § 10–915 of the Courts and Judicial Proceedings Article (CJP) reads, in pertinent part:

(c) *Purposes.*—In any criminal proceeding, the evidence of a DNA profile is admissible to prove or disprove the identity of any person, if the party seeking to introduce the evidence of a DNA profile:

(1) Notifies in writing the other party or parties by mail at least 45 days before any criminal proceeding; and

(2) Provides, if applicable and requested in writing, the other party or parties at least 30 days before any criminal proceeding with:

(i) First generation film copy or suitable reproductions of autoradiographs, dot blots, slot blots, silver stained gels, test strips, control strips, and any other results generated in the course of the analysis;

(ii) Copies of laboratory notes generated in connection with the analysis, including chain of custody documents, sizing and hybridization information, statistical calculations, and worksheets;

(iii) Laboratory protocols and procedures utilized in the analysis;

(iv) The identification of each genetic locus analyzed; and

(v) A statement setting forth the genotype data and the profile frequencies for the databases utilized.

(d) *Prerequisites.*—If a party is unable to provide the information required under subsection (c) of this section at least 30 days prior to the criminal proceedings, the court may grant a continuance to permit such timely disclosures.

In this case, there is no dispute that the State informed Mr. Ashton of its intent to use DNA evidence more than 45 days in advance of the criminal proceedings against him. The State notified Mr. Ashton on July 17, 2006, that it intended to introduce DNA evidence at trial. At that time the trial was scheduled to begin on September 5, 2006. The trial actually began on May 1, 2007. Mr. Ashton contends, however, that the State violated the statute by not satisfying the 30 day pre-trial production required by CJP § 10–915(c)(2).

The record indicates that Mr. Ashton made an omnibus demand for discovery and inspection on April 3, 2006.[4] At this point, however, the State had not informed him of its intent to use DNA evidence at trial. On appeal, the State takes the position that the defendant's request preceding the State's notice does not constitute compliance with CJP § 10–915(c)(2). We note that the statute is silent with respect to the order in which each notice must be provided. A common sense reading of the statute, however, suggests that the request for production follow the notice of intent to use the DNA evidence. Following the State's disclosure to Mr. Ashton that it intended to use DNA evidence, Mr. Ashton made no additional written requests for the DNA evidence. Shortly before trial, the State delivered copies of the DNA evidence and reports to Mr. Ashton's counsel.

While the DNA evidence was not delivered in accordance with the 30 day pre-trial delivery requirement of CJP § 10–915, the record reflects that once Mr. Ashton received notice from the State of its intent to use DNA evidence, he took no

---

4. That demand read as follows:

Produce and permit the Defendant to inspect a copy of all written reports or statements made in connection with the particular case of each expert consulted by the State, including the results of any physical or mental examination, scientific test, experiment or comparison, and furnish the Defendant with the substance of any oral report and conclusion made in connection with the particular case by each expert consulted by the State, including the results of any physical or mental examination, scientific test, experiment or comparison.

It made no specific reference to DNA evidence or to CJP § 10–915.

further action to inquire about production of the DNA evidence or to ensure that the requested evidence was produced in a timely fashion. Instead, Mr. Ashton waited for the State to make the required request for a continuance under CJP § 10–915(d) and strenuously and successfully opposed the State's request. He then filed a motion to exclude the DNA evidence, expecting that he had by his silence placed the court in a position that would compel it to grant his motion. But, the State opposed and the trial judge denied the motion, now placing him in a position which required him to request a continuance. Because appellant took no action beyond the lone paragraph in his omnibus motion to put the State on notice of his request for DNA evidence, even after receiving formal notification from the State of its intention to present DNA evidence, we cannot say that the trial judge abused his discretion in denying appellant's motion to exclude that evidence. *Hall v. University of Maryland Medical System Corp.*, 398 Md. 67, 82, 919 A.2d 1177 (2007) (stating that generally a trial court's ruling on the admissibility of evidence will not be disturbed on appeal unless there is a showing that the trial court abused its discretion).

Further, if we found any validity to Mr. Ashton's claim that the State violated CJP § 10–915 by not providing the evidence at least 30 days before trial, we still conclude that the trial court did not abuse its discretion. CJP § 10–915 is silent as to the remedy for violation. The only portion of the statute that addresses the result of a violation is CJP § 10–915(d) which states that if a party is unable to provide the required information, a judge may grant a continuance. Thus, if the court were to determine that CJP § 10–915 was violated, it would be in its discretion to determine the remedy for the violation. In this case, the court determined that the DNA evidence should not be excluded and we conclude that this evidentiary ruling was not an abuse of its discretion.

Under the facts presented to the circuit court, it was reasonable to find that appellant did not substantially comply with the statutory written request requirement.

### III.

██ Mr. Ashton next contends that the erroneous admission of the DNA evidence forced him to obtain a continuance that violated his right to be tried within 180 days of the earlier of his arraignment or his attorney's appearance before the circuit court, a date commonly referred to as his *Hicks* date. The State responds that Mr. Ashton's rights were not violated, as he requested and consented to the continuance.

Mr. Ashton's right to be tried within 180 days is based on Maryland Rule 4–271 and Md.Code (2001, 2008 Repl. Vol), § 6–103 of the Criminal Procedure Article (CP). Md. Rule 4–271 provides, in pertinent part:

The date for trial in the circuit court shall be set within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the circuit court pursuant to Rule 4–213, and shall be not later than 180 days after the earlier of those events.... On motion of a party, or on the court's initiative, and for good cause shown, the county administrative judge or that judge's designee may grant a change of a circuit court trial date. If a circuit court trial date is changed, any subsequent changes of the trial date may be made only by the county administrative judge or that judge's designee for good cause shown.

CP § 6–103 sets forth identical provisions.

In this case, Mr. Ashton, through his attorney, requested a continuance and consented to a new trial date that fell beyond the *Hicks* date.

The Court of Appeals has held:

[E]ven when a circuit court criminal case has been postponed beyond the 180–day time limit in violation of [CP § 6–103] and [Maryland Rule 4–271], the sanction of dismissal is inapplicable "where the defendant, either individually or by his attorney, seeks or expressly consents to a trial date in violation of [Maryland Rule 4–271]." This is not because the defendant, by his action or consent, has "waived" the requirements of [CP § 6–103] and [Maryland Rule 4–271], so that the requirements are inapplicable.

Rather, it is because "it would be entirely inappropriate for the defendant to gain advantage from a violation of the rule when he was a party to that violation."

*State v. Brown,* 307 Md. 651, 658, 516 A.2d 965 (1986) (citations omitted). Mr. Ashton filed a motion for a continuance which the court granted. CJP § 10–915(d) gives the court discretion to grant a continuance, so that a defendant may have adequate time to assess the evidence and prepare for trial. Mr. Ashton requested a continuance for 90 to 120 days and the circuit court granted the continuance, affording Mr. Ashton the 30 days required under the statute and an additional 96 days.[5] As he did at the time of his consent, Mr. Ashton now argues that he was coerced into seeking the continuance beyond 180 days.[6] He therefore contends his consent was not valid and the State violated his right to be tried within 180 days. For the reasons set forth *supra,* however, we have determined appellant's efforts to exclude the DNA evidence were insufficient and that his strategy on that issue failed, leaving him only the option of a continuance.

Because the court found good cause to continue the case and did so for the full amount of time requested, we conclude that Mr. Ashton's rights under Md. Rule 4–271 were not violated. The court stated: "I do find sufficient cause to continue it and to continue it beyond Hicks." We review the court's good cause finding for a clear abuse of discretion or a lack of good cause as a matter of law. *State v. Frazier,* 298 Md. 422, 454, 470 A.2d 1269 (1984). In this case, the court found that the defense required additional time to prepare due to the delay in the delivery of DNA evidence and, as a result, there was good cause to continue beyond 180 days. We agree.

---

**5.** The circuit court scheduled the trial for January 9, 2007. It was continued again, per Mr. Ashton's request, until May 1, 2007.

**6.** Mr. Ashton, however, made no motion to dismiss based upon a coerced continuance beyond *Hicks* in the eight months between the granting of the continuance motion and the new trial date.

### IV.

■ Mr. Ashton's final contention is that the trial judge violated his constitutional right to confront a witness by preventing Mr. Ashton from cross-examining Mr. Anderson on matters concerning his bias and credibility. The State counters that the trial court properly exercised its discretion in limiting Mr. Ashton's cross-examination of the witness.

■ A criminal defendant's right to confront witnesses is guaranteed by the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights. *Pantazes v. State*, 376 Md. 661, 680, 831 A.2d 432 (2003). "Central to that right is the opportunity to cross-examine witnesses." *Id.* However, the defendant's right to cross-examine is not limitless, as judges "have wide latitude to establish reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* Thus, the scope of the cross-examination lies largely within the discretion of the trial judge. *Id.* at 681, 831 A.2d 432. Whether the trial court abused its discretion depends on the individual circumstances of the case. We must determine "whether the trial judge imposed limitations upon cross-examination that inhibited the ability of the defendant to receive a fair trial." *Id.* at 681–82, 831 A.2d 432.

■ In this case the trial judge sustained three objections on the ground that the appellant's questions were outside the scope of direct. The judge stated that he was "limiting [Mr. Ashton's] cross-examination to the scope of the direct." Generally, the scope of cross is limited to the subjects raised on direct examination. *Smallwood v. State*, 320 Md. 300, 307, 577 A.2d 356 (1990). However,

> within that limit a defendant should be free to cross-examine in order to elucidate, modify, explain, contradict, or rebut testimony given in chief. It is also proper to cross-examine as to facts or circumstances inconsistent with testimony, and to bring out the relevant remainder or whole of

any conversation, transaction, or statement brought out on direct questioning.

Finally, . . . one should be allowed to cross-examine in order to determine the reasons for acts or statements referred to on direct examination.

*Id.* (citations omitted). Thus, we must determine whether the limitation the trial judge placed on Mr. Ashton's cross examination of the State's witness was an abuse of his discretion.

The State's direct examination focused on Mr. Anderson's relationship with Mr. Ashton and the course of events that took place on December 14 and 15, 2005 at Mr. Anderson's duplex. Mr. Ashton appeals the judge's ruling on the State's objection to questions his counsel asked Mr. Anderson on cross-examination. Mr. Ashton's counsel began his questioning of Mr. Anderson by asking him about a book bag that had been discussed on direct and Mr. Ashton's clothing when he saw him the night of the incident. Mr. Ashton's counsel then began questioning Mr. Anderson about Demetrius Daughtry, a.k.a. "Dooby".[7] The questioning proceeded as follows:

[Defense Counsel]: Do you know Demetrius Daughtry?

[Anderson]: No.

[Defense Counsel]: You know a man by the name of "Dooby"? "Dooby" drives a black—.

[Anderson]: Yeah, Mercury LT.

[Defense Counsel]: You know "Dooby." Now, I direct your attention to December 14th. Do you recall where you were at 1:00 o'clock that day?

[Anderson]: At work.

[Defense Counsel]: You were at work?

[Anderson]: Yes.

[Defense Counsel]: You weren't with "Dooby"?

[Anderson]: No, I wasn't.

[Defense Counsel]: You weren't with "Dooby" with the black Mercury car?

---

7. The man who was initially apprehended on the day of the incident.

[Anderson]: No.

[State]: Objection. Asked and answered and relevance.

[Defense Counsel]: Well, I could proffer relevance if you want me to.

[The Court]: Sustained as being beyond the scope.

\* \* \*

[Defense Counsel]: You do know "Dooby"; is that right?

[Anderson]: Yeah, I know him.

[Defense Counsel]: What's your relationship to "Dooby"?

[Anderson]: I don't know him like that. I seen him a couple of times.

[Defense Counsel]: Seen him a couple of times?

[Anderson]: Yea, three—about three or four times.

[Defense Counsel]: Did you ever discuss the shooting at Yum's Carry Out with "Dooby"?

[State]: Objection, Your Honor.

[Anderson]: No, I haven't.

[The Court]: Basis?

[State]: Way beyond the scope and relevance.

[The Court]: Sustained. Sustained as beyond the scope.

[Defense Counsel]: So if "Dooby" said that, he'd be lying; is that right?

[Anderson]: Yes.

[State]: Objection.

[The Court]: Basis? What—sustained. Strike the question and the answer. Beyond the scope.

\* \* \*

[Defense Counsel]: All right. Do you know Oxon Hill, Kennebec Street. You don't know where Kennebec Street is?

[Anderson]: No, I don't know.

[Defense Counsel]: You live by Riverdale?

[Anderson]: I live by Riverdale, yeah.

[Defense Counsel]: When was the last time you were at Riverdale before the 14th?

[State]: Objection.

[The Court]: Basis?

[State]: Beyond the scope.

[The Court]: Sustained.

Mr. Ashton contests the court's ruling on the State's objection to three questions: 1) "You weren't with "Dooby" with the black Mercury car [on the day of the incident]?" [8] 2) "Did you ever discuss the shooting at Yum's Carry Out?" [9] and 3) "When was the last time you were at Riverdale before the 14th?" The three questions Mr. Ashton's attorney attempted to ask were not within the scope of the State's direct examination, and were not justifiable under the standards set forth by the Court of Appeals in *Smallwood*. Mr. Ashton argues here that these questions were being asked to attempt to establish a criminal relationship between Mr. Anderson and Mr. Daughtry which compromised Mr. Anderson's credibility. His counsel at trial, however, failed to proffer to the court how the questions he wanted to ask went to Mr. Anderson's bias or credibility. Although he offered to proffer their relevance, he did not do so and continued his cross-examination in the face of the court's ruling on the scope of direct examination. On the record before us, we conclude that the trial judge did not abuse his discretion in sustaining the State's objection to these questions.

**JUDGMENTS OF CIRCUIT COURT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

8. The State objected to this question on the basis that it had already been asked and answered and relevance.

9. It is difficult to determine where this question might have led, but it is unlikely that appellant's counsel could have met the requirements of either Md. Rule 5–608(b) or 5–609 to introduce testimony linking Mr. Anderson to this shooting incident.